UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| PASTOR MARK MILLER, and the BURIEN FREE METHODIST CHURCH, also known as the OASIS HOME CHURCH, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF BURIEN, a municipal corporation; JEFFREY D. WATSON, Planning Representative for the City of Burien; and JOSEPH STAPLETON, Building Representative for the City of Burien, <br><br> Defendants. | NO. <br><br> COMPLAINT FOR DECLARATORY RELIEF |

Plaintiffs Pastor Mark Miller and the Burien Free Methodist Church, by and through their attorneys of record, allege as follows.

## I.   INTRODUCTION

1.     On September 25, 2023, the City of Burien enacted Ordinance No. 827, amending Ordinance No. 818 (described by the City as "An Anti-Camping or Anti-Dwelling Ordinance"). Ordinance No. 827 made it a misdemeanor offense for any person to "use[] nonresidential public property … as a temporary or permanent dwelling, lodging, residence, or living accommodation at any time between 7:00 p.m. and 6:00 a.m. …."

2.     The Mayor of Burien approved the Ordinance and signed it on October 2, 2023.

3.     Ordinance No. 827 was not immediately effective. It went into effect on November 1, 2023.

COMPLAINT FOR DECLARATORY RELIEF – 1

OAS006-0001 7413713

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

4.      When the Ordinance was enacted scores of Burien's homeless people living on public property in an encampment known as the Ambaum encampment were faced with the problem that as of November 1st there would no longer be anyplace in Burien where they could lawfully live.

5.      On November 7, 2023, six days later after the Ordinance took effect, the Burien Free Methodist Church began hosting an encampment for the homeless on its own property.

6.      For a period of three months during the winter of 2023-24, the Church hosted approximately 100 homeless people.  For this three-month period the Church allowed the homeless to live outdoors on the Church's property.  A map of encampment is attached as Appendix A.

7.      A dispute arose between the Church and the City of Burien.

8.      The City insisted that before it could host the homeless, the Church had to apply for a license – a "temporary use permit." The City maintained that it had the legal right to preclude the Church from hosting an encampment by denying the application for a permit.

9.      The Church maintained that the City's licensing requirement was an unconstitutional prior restraint on the Church's fundamental state and federal constitutional rights to free exercise of religion.

10.     Citing cases such as *Cantwell v. Connecticut,* 310 U.S. 296, (1940) (striking down statute requiring Jehovah's Witnesses to get a license before they could solicit donations), the Church also maintained that the City's licensing law was unconstitutionally vague because it vested City officials with completely unfettered discretion to deny a permit for a homeless encampment simply be asserting that a proposed encampment would be "annoy[ing]," "dangerous," or "unreasonably offensive" to other persons.

11.     The Church also maintained that the City's position that it could refuse to allow the Church to host such an encampment violated the federal Religious Land Use and

COMPLAINT FOR DECLARATORY RELIEF – 2

OAS006-0001 7413713

Institutional Persons Act ("RLUIPA"), 42 U.S.C. §§2000cc, *et seq.* and provisions of Washington State statutes.

12.     The Church's three-month hosted encampment ended on February 5, 2024, but the legal dispute between the City and the Church was never resolved.

13.     During the three-month period of the hosted encampment, the City notified the Pastor and the Church that they were breaking the law and imposed fines on the Pastor and the Church.

14.     After the three-month hosted encampment ended, the City made conflicting statements about its intentions with respect to those fines.  Eventually, counsel for the City represented that Pastor Miller and the Church could stop worrying about those fines because the City would cancel them or make no effort to collect them.

15.     The Plaintiffs intend to host more encampments for the homeless in the future. The legal dispute between the parties will resurface at that time.

16.     Neither the City nor the individual defendants have ever promised, suggested, or implied, that if the Plaintiffs host another unlicensed or unpermitted homeless encampment on their property that no fines will ever be imposed.  And even if such an express promise were made, it could never be enforced if a future City Council or a future city executive official decided to retract or repudiate such a promise.

17.     The Plaintiffs bring this declaratory judgment action so that the legal dispute between the parties can be resolved, thus enabling the Church, and any other church located within Burien, to plan future encampments for the homeless without fear that the City will attempt to penalize them for hosting an encampment without first obtaining a license from the City.

## II.     PARTIES

18.     Pastor Mark Miller is the pastor of the Burien Free Methodist Church located at 520 S. 150th Street in Burien, Washington.

COMPLAINT FOR DECLARATORY RELIEF – 3

OAS006-0001 7413713

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

19.     The Burien Free Methodist Church is also known as the Oasis Home Church.

20.     The City of Burien is a municipality and a political subdivision of the State of Washington.

21.     Jeffrey D. Watson is an employee of the City of Burien, and his job title is Planning Representative for the City of Burien.

22.     Joseph Stapleton is an employee of the City of Burien, and his job title is Building Representative for the City of Burien.

## III.     JURISDICTION AND VENUE

23.     This Court has jurisdiction over the subject matter of this suit pursuant to 28 U.S.C. § 1343(3); 42 U.S.C. §1983; 28 U.S.C. §2201; and 42 U.S.C. §2000cc-2. This Court also has supplemental jurisdiction over the state law claims which arise out of the same nucleus of facts as the claims brought pursuant to 28 U.S.C. §1367.

24.     All claims arose in the Western District of Washington.  On information and belief, the individual defendants reside within the Western District of Washington.

25.     The Defendant City is located entirely within the Western District of Washington.

26.     Venue properly lies within the Western District of the State of Washington.

## IV.     OPERATIVE FACTS

27.     While the Church was willing to supply the City with all of the information which the City asked for on its temporary use permit application form, the Church was not willing to recognize the City's purported right to decide whether or not to allow the Church to host the homeless on its own property.

28.     The Church did supply the City with all of the information which the City's application form requested; but the church never submitted an application and never asked to be granted a temporary use permit.

COMPLAINT FOR DECLARATORY RELIEF – 4

OAS006-0001 7413713

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

29.     The Church never applied for, and never requested City issuance of a temporary use permit.

30.     The City never issued a temporary use permit and never denied one either.

31.     The legal dispute between the City and church was never resolved.

32.     Starting on November 7, 2023, the Church hosted the homeless on its own property for a three-month period.

33.     On November 15, 2023, Burien Assistant City Attorney Ndiabou Diagana sent a letter to Pastor Miller. The letter was identified as a "Demand Letter – Apply for a Temporary Use Permit for Encampment Operations." A copy of that letter is attached as Appendix B.

34.     The City's Demand Letter asserted that hosting an encampment for the unhoused was an "unpermitted use" under Burien's Zoning code. The city further stated that although "Burien understands, supports and welcomes the religious intent behind providing shelter to the unhoused, the Burien Municipal Code requires a temporary use permit before this can be done at your facility."

35.     The city noted that the Church has not submitted a temporary use permit application and demanded that the Church "rectify this situation" by submitting one.

36.     On November 21, 2023, the Plaintiffs responded to the City's Demand Letter and advised the City that they believed (1) that BMC §19.75. 010 et seq. did not apply to their homeless encampment because such use of its own property was "otherwise permitted" by BMC §19.75 because BMC §19.15.001 and §19.15.005(9) expressly recognizes that use of property as a "Religious Facility" is a permitted use; (b) that application of BMC §19.75. 010 et seq. to their encampment would violate the Free Exercise Clause of the U.S. Constitution; and (3) that it would constitute an unconstitutional prior restraint under both the state and federal Constitutions. A copy of that letter is attached as Appendix C.

37.     On November 29, 2023, the City responded by letter stating in part that "Burien neither questions Oasis' purpose, its religious conduct, nor the sanctity of hosting unhoused

COMPLAINT FOR DECLARATORY RELIEF – 5

OAS006-0001 7413713

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

people, nor is Burien regulating religious conduct through permits." However, the City asserted that the Church's encampment was either "a use not permitted" in the zone where the Church was located, or that it was a use which was "being expanded beyond a previous approval," and "[t]hus, like any other property owner, Oasis must obtain a temporary use permit to host an encampment since encampments are not permitted in any Burien zone." Burien asserted that by commencing the hosting of an encampment without first seeking a temporary use permit, the Church 's action "violates the Burien Municipal Code." A copy of that letter is attached as Appendix D.

38. On December 1, 2023, deputies of the King County Sheriff's Office, acting as officers of the Burien Police Department, arrived at an unsanctioned homeless encampment known as the "Ambaum" encampment, located near SW 120th Street and Ambaum Boulevard and informed people living there that they could not live at that site any longer.

39. The sheriff's deputies informed the camp residents that if they did not have their property packed up and ready to leave that they could be arrested.

40. No arrests were made on December 1, 2023. All the unsheltered people who had been living in the Ambaum encampment left the encampment.

41. Several of the homeless people swept from the Ambaum encampment went to the Church's hosted encampment and lived there during the three-month period of time during which the Church encampment was operating. When asked where the evicted homeless people went after the City evicted them, a city official was reported as acknowledging that some of them went to the Oasis Home Church property and were now living there.

42. On December 7, 2023, the Plaintiffs responded to the City's letter of November 29, 2023. A copy of that letter is attached as Appendix E. In this letter the Church flatly disagreed with Burien's November 29th assertion that it was not "regulating religious conduct through permits."

COMPLAINT FOR DECLARATORY RELIEF – 6

OAS006-0001 7413713

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

43. In its December 7th letter, the Church again cited case law which expressly recognizes that when a Church "holds the sincere religious belief that the provision of outdoor space for the homeless is a religious duty and 'an integral part of its religious mission[,] [s]uch conduct is 'therefore protected under the Free Exercise Clause'" of the First Amendment. Appendix E, p. 1, ¶2. "Thus, Burien *is* attempting to regulate religious conduct." *Id.*

44. In the same letter, the Church disputed Burien's interpretation of RCW 35A.21.360, noting that (a) nothing in that statute "state[d] that a Washington code city is allowed to require any kind of permit before a church can be allowed to engage in religious conduct"; and (b) that "even if some state statute explicitly authorized cities to require such a permit, such a law would be blatantly unconstitutional" under U.S. Supreme Court precedent.. *Id*. at p. 2, ¶1

45. In its December 7th letter, the Church noted that the City's Temporary Use Permit Application form only asked three questions that might conceivably be related to safety or health hazards.  Appendix E, p. 3, ¶1.  Those questions are:

Is electrical power needed? Is liquor being sold? Is use of public right-of-way required? (A copy of Burien's temporary use permit application form is attached as Appendix F.) The Church's December 7th letter advised Burien that it had "no problem with supplying you with the answers to these questions."  Appendix E, p.3, ¶2.

46. In that letter, the Church did in fact answer all three questions, stating: "The answers are as follows. No, no, and no.  The Church already receives electrical power, and the Church pays for all the electricity that it uses.  No liquor is being sold.  No use of any public right-of-way is required." *Id.*  Thus, the City actually received all the information that it would have received if the Church had put that same information on the City's formal application form.

47. The Church explained that it was not willing to submit the application form with the exact same information recorded on it because the submission of the form would imply a

COMPLAINT FOR DECLARATORY RELIEF – 7

OAS006-0001 7413713

concession that the City had the power to prevent the Church from operating its outdoor homeless encampment by requiring the Church to ask for issuance of a permit, and then denying that request: "Were the Church to concede that the City had that power, then the City would be able to prevent it from exercising its religion and the Church would have to initiate a lengthy appeal procedure in the hopes that the denial of a permit would be reversed." *Id.* at p.3, ¶5. "Such an appeal procedure could take a very long time," and "could easily take more than a year." *Id*. at ¶6. The Church explained that the lengthy time period for processing an appeal was precisely the reason why both the state and federal constitutions prohibited licensing restrictions on the exercise of constitutional freedoms as unconstitutional prior restraints. *Id*. at pp. 4-5, citing cases such as *Cantwell v. Connecticut*, 310 U.S. 296 (1940) and *Ino Ino, Inc. v. City of Bellevue*, 132 Wn.2d 103, 123, 937 P.2d 154 (1997).

48.     Also on December 7, 2023, the City issued a Notice of Civil Violation (attached as Appendix G) and sent it to Pastor Miller and the Church by regular and certified U.S. first class mail.  Plaintiffs received the Notice a day or two after December 7. The Notice of Civil Violation informed them that the Church had committed five violations of the Burien Municipal Code.

49.     The Notice of Civil Violation stated that pursuant to BMC 8.45.015, entitled *Declaration of nuisance,* "[a]ll violations of city of Burien ordinances are found and declared to be detrimental to the public health, safety, and welfare and are further found and declared to be nuisances.  It is unlawful and a violation of this chapter, whether by act or omission, to cause, create, maintain, suffer, or allow a nuisance to occur, exist, or remain."  BMC 8.45.015.

50.     The Notice further informed Pastor Miller and the Church that BMC 8.45.020(5)(a) defined "Nuisance" as "A violation of any city of Burien ordinance."

51.     The Notice further informed Pastor Miller and the Church that BMC 8.45.020(5)(b) defined "Nuisance" as: "Doing an act, omitting to perform any act or duty, or permitting or allowing any act or omission, which annoys, injures, or endangers the comfort,

COMPLAINT FOR DECLARATORY RELIEF – 8

OAS006-0001 7413713

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

repose, health, or safety of others, is unreasonably offensive to the senses, or which obstructs of interferes with the free use of property so as to interfere with or disrupt the free use of that property by any lawful owner or occupant; or the existence of the aforementioned in this subsection as defined in BMC 8.45.020(5)(c)."

52.    The Notice further informed Pastor Miller and the Church that the Church was violating BMC 19.75.010 by failing to apply for a temporary use permit that would allow the Church to conduct an "otherwise unpermitted" use in the zone where the Church was located. The Notice asserted that allowing a homeless person to live on Church property was an unpermitted use.

53.    The Notice of Civil Violation informed Pastor Miller and the Church that the City was imposing a continuing fine on Pastor Miller and on the Church.

54.    In the Notice of Civil Violation, the City notified the Pastor and the Church that the fine would increase every day for as long as the hosted encampment lasted.

55.    Burien notified Plaintiffs that it had imposed a monetary penalty of $125 for the "first" violation" and an additional $250 fine for every second or subsequent violation.

56.    Moreover, the City notified plaintiffs that *each day* that Plaintiffs persisted in failing to seek the City's permission to host homeless people without first obtaining the City's permission to do so constituted a separate violation for which another monetary penalty will be assessed.

57.    The Notice of Violation was signed by defendants Watson and Stapleton.

58.    On December 12, 2023, at 1:20 p.m., Defendant Watson sent the following email:

Paster [sic] Miller:

I am contacting you to let you know the City of Burien needs to conduct an inspection in connection with the needed Temporary Land Use Permit for the homeless encampment on the Oasis Church site.  We would like to have inspectors from the City and King County Fire District #2 visit the site tomorrow, Wednesday.  The inspection

COMPLAINT FOR DECLARATORY RELIEF – 9

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

will enable the City to process a Temporary Use application expeditiously, once it is submitted.  Please let me know if tomorrow will work for you.  Thank you.

Jeff Watson

(Copy of email attached as Appendix H):

59.     The next morning, at 7:56 a.m. on December 13, Pastor Miller responded to Watson's email.  Pastor Miller explained that Watson had incorrectly assumed that the Church would be submitting an application for a temporary use permit.  However, Pastor Miller stated that the Church (a) was willing to having the encampment inspected by the King County Fire Department and was making arrangements for such an inspection; and (b) was open to trying to negotiate a mutually acceptable Memorandum of Understanding ("MOU"):

Hey Jeff:

At this time we would not be open to an inspection from the City.  We are reaching out to King County Fire District #2 and will be scheduling a walkthrough.

Your email presumes the Church will be submitting a temporary use permit.

We will not, for the reasons previously stated by our counsel, be asking the City for advance permission to conduct a core expression of our faith.

We are open to discussing a memorandum of understanding with the City, as contemplated by RCW 35A.21.360.  If the City wishes to pursue this collaborative approach, as opposed to its current enforcement action, please advise, or send over a proposed MOU.

Thank you for reaching out.

Sincerely,
Pastor Mark Miller
Oasis Home Church

(Copy of email attached as Appendix I).

60.     On December 13 at 4:43 p.m., Watson replied as follows:

Pastor Miller:

COMPLAINT FOR DECLARATORY RELIEF – 10

OAS006-0001 7413713

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

Thank you for responding so quickly.  As you requested below, consistent with RCW 35A.21.360, attached is a proposed memorandum of understanding for your review.  If agreeable, please sign and return it as soon as possible.

Thank you,

Jeff Watson

(Copy of email attached as Appendix J).

61.     The King County Fire District #2 did conduct a fire inspection on January 24, 2024.  Pastor Miller was present when the inspection took place.  The only suggestion the Fire Chief made was not to use such a long extension cord to bring power from inside the church to the outside where the encampment was located.  The Fire Chief expressed his desire not to be involved in any dispute between the Church and the City of Burien.

62.     A copy of the City's proposed MOU is attached as Appendix K.

63.     On December 26, 2023, Pastor Miller sent Watson a proposed revision of the MOU which the City had sent on December 13.  A copy of the Church's revised MOU and the accompanying email is attached as Appendix L.  Among other revisions, this revised MOU contained a provision stating that the City was withdrawing with prejudice the Notice of Violation that it had issued on December 7.

64.     On January 11, 2024, the City sent Pastor Miller another revised draft of an MOU.  A copy of this proposed draft of an MOU is attached as Appendix M.

65.     On January 22, 2024, Plaintiffs' counsel sent the City a letter explaining that the City's latest (January 11) proposed MOU was not acceptable because it did not state that the Notice of Violation issued on December 7, 2023, was dismissed with prejudice and that all previously accrued fines imposed by that Notice were waived.

66.     On January 24, 2024, Mr. Nathan Hawthorne, a Paralegal employed by the City of Burien, emailed Plaintiffs' counsel a letter signed by Assistant City Attorney Ndiabou Diagana, and yet another draft of a proposed MOU.  A copy of that email is attached as Appendix N.

COMPLAINT FOR DECLARATORY RELIEF – 11

OAS006-0001 7413713

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

67.     A copy of the January 24 letter signed by Ms. Diagana is attached as Appendix O.  In that letter Ms. Diagana wrote: "Burien agrees to withdraw the Notice of Civil Violation dated November 16th 2023, including all fines and fees accrued, with prejudice. In addition, Burien will not seek a judgment or enforce a judgment related to that Notice of Civil Violation. In exchange, your client signs the enclosed MOU."

68.     A copy of the City's January 24th revised proposed MOU is attached as Appendix P.

69.     On January 26, 2024, Pastor Miller signed the City's January 24, 2024 proposed MOU and sent it back to the City by email addressed to Mr. Hawthorne.  A copy of the MOU bearing Pastor Miller's signature is attached as Appendix Q.

70.     A copy of counsel's January 26, 2024 email to Mr. Hawthorne is attached as Appendix R. In that email counsel asked to receive back a copy of the MOU signed by a City official with authority to sign it:

> Please have the MOU signed by a Burien City official with authority to sign for the City.  I assume that would be either the Mayor or the City Manager.  After the City's agent has signed it, please send me back a copy bearing that signature and a notice of withdrawal with prejudice of the notice of violation issued on December 7, 2023.  It is fine to send it to me [sic] those documents as attachments to an email.  I assume the MOU will take effect as soon as the City signs it.
>
> Thank you for your assistance.
>
> James E. Lobsenz

71.     On the afternoon of January 26, Mr. Hawthorne acknowledged receipt of the email and stated that he had passed the MOU with Pastor Miller's signature on to the City Attorney and to the City Manager. (Copy attached as Appendix S).

72.     The Church's hosted encampment ended on February 5, 2024.

73.     On February 6, 2024, Plaintiffs' counsel emailed Mr. Hawthorne and Ms. Diagana to say that he had not heard or received anything from the City since he sent the signed

COMPLAINT FOR DECLARATORY RELIEF – 12

OAS006-0001 7413713

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

MOU on January 26 and inquired when he could expect to hear back from the City. (Copy attached as Appendix T).

74.     On February 12, 2024, Mr. Hawthorne replied by email, stating that "[w]ith the recent news that Oasis is no longer hosting the encampment, there is no longer a need for the MOU."  (Copy attached as Appendix U).

75.     On April 3, 2024, Plaintiffs' counsel wrote to Assistant City Attorney Diagana inquiring whether the City and the Church might resolve their dispute, over whether the City could lawfully insist that the Church apply for and receive a permit before it could host the homeless on its own property, without having to resort to litigation.

76.     On April 5, 2024, Plaintiffs' counsel received a response from attorney Adam Rosenberg acknowledging that Burien was in receipt of the Plaintiffs' proposal set forth in its April 3, 2024 letter.  Implicitly, attorney Rosenberg represented himself as counsel for the City.  In the course of that letter, attorney Rosenberg represented that litigation was not needed in order to "rescind" the fines previously imposed upon the church and the Pastor:

> From our perspective, you do not – and in fact, your client can consider the fine permanently withdrawn right now.   The original notice was issued primarily as a mechanism to develop a record and seek guidance from the Hearing Examiner around competing code interpretations.  Unfortunately, neither you nor your client appeared, appealed, or responded to it – so a fine was entered by default in December 2023.  Still, as you know, as of April 2024 Burien has never reduced it to judgment or executed it in superior court.  There have been no efforts to collect, which is notable since the fine is effectively unappealable at this juncture under *Nykriem* and *Habitat Watch*.  But for Burien has [sic] never been about fines, only about protecting public safety and health.  Thus, please allow this letter to reiterate and confirm ***what has been Burien's effective position all along:  nothing is owed by your client, nor will your client be liened on the basis of the default-fine.***

> *(Emphasis added).*

77.     It has ***not*** been Burien's position all along that neither Pastor Miller nor the Church owes Burien anything, or that the fines have been or will be rescinded.

COMPLAINT FOR DECLARATORY RELIEF – 13

OAS006-0001 7413713

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

78.     From December 7, 2023, up until January 24, 2024, Burien's position was that that a continuing fine had been imposed, that the fine continued to increase every day, and that the fine did have to be paid.

79.     On January 24, 2024, Burien proposed that it would withdraw the fines with prejudice *provided* the Plaintiffs agreed to the revised MOU which Burien proposed on January 24, 2024.

80.     The Plaintiffs *did* agree to the January 24, 2024 MOU proposed by the City of Burien, and Pastor Miller signed it, and it was sent to the City for execution by an authorized City official, but no City official ever signed it. Thus, up until January 24, the City consistently took the position that valid fines were being imposed and would be enforced.

81.     For a brief period of time, between January 26 and February 12, it appeared that the City had agreed to rescind the fine, and that it would execute an MOU memorializing that agreement. But on February 12, 2024, the City repudiated that promise and declined to have any City official execute the MOU which the City itself had proposed and which the Plaintiffs had agreed to and had executed.

82.     Plaintiffs are unaware of any official action taken by any Burien City official or agent that would grant attorney Rosenberg the legal authority to rescind the fine imposed by defendants Watson and Stapleton.

83.     Plaintiffs doubt that either the Mayor, or the City Manager, has any such authority.

84.     Even if one assumes, hypothetically, that some City official *actually has legally* rescinded the fine *previously* imposed by defendants Watson and Stapleton for having allegedly violated City regulations during the time period from November 7, 2023 through February 5, 2024, such a recission does not resolve the parties' dispute.  Should the Plaintiffs decide to again host the homeless on Church property, during the upcoming winter of 2024-2025, or at any other future time, no City official and no attorney representing the City has represented that

COMPLAINT FOR DECLARATORY RELIEF – 14

OAS006-0001 7413713

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

the City will not again impose fines on the Plaintiffs if they fail to apply for a City permit to conduct another hosted encampment.

85.    During the three-month hosting period the Burien Community Support Coalition ("BCSC"), a nonprofit corporation, operated the encampment.

86.    During the three-month encampment, the Church and the BCSC required all residents of the encampment to obey its "Code of Conduct."

87.    The Code of Conduct included a total prohibition against violence, possession of firearms, and theft. They also prohibited verbal abuse, threatening or harassing behavior, illegal drug use, littering, trespassing on private property in the neighborhood, and open flames. The Code also required that all residents be quiet between the hours of 9 p.m. and 9 a.m.

88.    During the three-month encampment there were no sanitation or public health problems.

89.    With the assistance of the King County Sherriff's Department, the BCSC did background checks on all homeless persons who asked to live in the encampment.  Specifically the Sheriff's Department was asked to screen all applicants in order to ensure that none were registered sex offenders.

90.    To the best of the Plaintiffs' knowledge, no registered sex offenders ever resided in the Church's hosted encampment.

91.    After the hosted encampment ended on February 5, 2024, many of the homeless people who had resided on the Church property resumed living elsewhere within the City of Burien.

92.    On March 4, 2024, the City passed Ordinance 832, which repealed and replaced Ordinance 827.  This new ordinance contains many of the same restrictions previously found in Ordinance 827, and additionally restricts an unhoused individual's right to live in Burien to poorly defined areas that are designated on a map prepared by the City Manager.

COMPLAINT FOR DECLARATORY RELIEF – 15

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

OAS006-0001 7413713

93.     On March 11, 2024, King County Sheriff Patricia Cole-Tindall, brought suit against the City of Burien, alleging that Burien's Ordinance No. 832 was unconstitutional; that the Sheriff is obligated to respect the constitutional rights of the unhoused residents of Burien and thus required to refuse to enforce that ordinance; and requesting that Burien be enjoined from requiring the King County Sheriff's Office to enforce the ordinance. *Cole-Tindall v. City of Burien*, U.S. District Court for the Western District of Washington, Case No. 24-cv-00325 DWC.

94.     Towards the end of the three-month period of the Oasis Home Church encampment, and shortly after the encampment ended, Pastor Miller and the Church made a public plea encouraging other churches to host the homeless on their property, so that the homeless who had been living on the grounds of the Oasis Home Church, would have some place where they could live.

95.     No other church responded by offering to host the homeless on their property.

96.     Many of the homeless who did live at the Oasis Home Church during the three-month hosted encampment, continue to live in Burien, albeit "illegally" in the sense that they reside on public property in violation of Burien's anti-dwelling law.

97.     On January 3, 2024, the Seattle King County Coalition on Homelessness, a nonprofit organization, and three homeless residents of Burien, brought suit in King County Superior Court, alleging that Burien's anti-dwelling law violates several provisions of the Washington Constitution.  That case (King County Cause No. 24-2-00127-1-KNT), is now pending in that court.

98.     In the future, the Oasis Home Church intends to conduct additional hosted encampments for the homeless people of Burien.

99.     The Church and Pastor Miller recognize that a dire need for a safe place where the homeless residents of Burien can live continues, particularly in the winter months when colder temperatures create an increased risk of death or serious injury from hypothermia.

COMPLAINT FOR DECLARATORY RELIEF – 16

OAS006-0001 7413713

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

100. The next time the Church decides to host an encampment for the homeless, the City of Burien will again insist that the Church cannot legally host such an encampment without the City's approval expressed in the issuance of a temporary use permit.

101. When this happens, the Church and Pastor Miller will again refuse to seek City approval for issuance of such a license.

102. When this happens and the Church operates another hosted encampment, it has every reason to expect that the City will again impose, or threaten to impose, fines against Pastor Miller and/or the Church.

103. The City's Notice of Civil Violation asserted that November 13, 2023, was the first day upon which Plaintiffs began to commit the specified violations. The Notice of Civil Violation was issued on December 7, 2023. By that date, 21 days had elapsed from the supposed "first" date of violation. Thus, according to the City, as of December 7, 2023, the Plaintiffs' fine was $25,625. The City asserted that every day after December 7 during which the hosting continued, the fine continued to grow by another $250. By December 26, 2023, the fine had increased to $47,375. By January 11, 2024, the fine was $66,375. By January 22, it was $83,375. By the end of the 90-day hosted encampment, the continuing fine had grown to $104,375.

104. The Plaintiffs have consistently refused to acknowledge Burien's so-called legal right to license religious conduct.

105. Burien has consistently asserted that it has the right to decide whether to permit a church to host the homeless on its own property, despite expressly acknowledging that the religious purpose of the encampment and the sanctity of hosting unhoused people.

106. Although Burien maintained that the Church's homeless encampment was "potentially dangerous" to the health and safety of the homeless people residing in the encampment, Burien never identified any threat to public health or safety, much less any immediate and grave threat.

COMPLAINT FOR DECLARATORY RELIEF – 17

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

OAS006-0001 7413713

107.    The Plaintiffs unsuccessfully attempted to negotiate an agreed resolution of their dispute with the City. Despite their efforts, the dispute remains unresolved.  Consequently, Plaintiffs have initiated this suit for declaratory relief so that this Court may declare the legal rights of the parties.

## V.    CAUSES OF ACTION

### A.    Deprivation of Federal Constitutional Right to Free Exercise of Religion
### (First cause of action)

108.    By adopting and by enforcing laws, policies and customs that purport to make it unlawful for a Church and/or its Pastor to host homeless people on the Church's own property, without first securing a permit from the City, the Defendants have deprived the Plaintiffs of their federal constitutional right to free exercise of religion guaranteed by the First and Fourteenth Amendments to the United States Constitution, contrary to 42 U.S.C. §1983.

### B.    Deprivation of Washington State Constitutional Right to Freedom from Prior Restraint under article 1, sections 5 & 11
### (Second cause of action)

109.    By adopting and by enforcing laws, policies and customs that purport to make it unlawful for a Church and/or its Pastor to host homeless people on the Church's own property, without first securing a permit from the City, the Defendants have deprived the Plaintiffs of their state constitutional rights to free exercise of religion and to freedom to freely speak on all subjects, guaranteed by the Washington Constitution, article 1, §§ 5 & 11.

### C.    Deprivation of Washington State Constitutional Right to Free Exercise of Religion under article 1, section 11
### (Third cause of action)

110.    By adopting and by enforcing laws, policies and customs that purport to make it unlawful for a Church and/or its Pastor to host homeless people on the Church's own property,

COMPLAINT FOR DECLARATORY RELIEF – 18

OAS006-0001 7413713

without first securing a permit from the City, the Defendants have deprived the Plaintiffs of their state constitutional rights to free exercise of religion by violating their right under the Washington Constitution, article 1, §11, to not "be molested or disturbed in person or property on account of religion."

### D.  Deprivation of Federal Constitutional Right to Procedural Due Process of Law (Fourth cause of action)

111.    By adopting and by enforcing laws such as Burien Municipal Code § 19.75.090, which prohibits issuance of a temporary use permit unless the applicant demonstrates that its proposed temporary use "will not be materially detrimental to the public welfare," the City has vested city officials with unfettered discretion to deny a permit that would allow the Plaintiffs to carry out such hosting for whenever the official subjectively conclude that such hosting would be "detrimental" to the City.  This law does not define what would make a use "detrimental to the public welfare" and thus fails to provide the ordinary intelligent person with the knowledge necessary to comply with the law.  Compounding the problem, the Burien Municipal Code purports to authorize the City to find that any use of private property which "annoys," or "endangers the comfort, [and] repose, . . . or "is unreasonably offensive" to others, constitutes an unlawful nuisance which violates City law.

112.    In addition, this law enables city officials to engage in arbitrary and discriminatory enforcement of the temporary use permit law, enforcing it against people seeking to conduct unpopular activities, and failing enforce against others.  Thus, Defendants have deprived the Plaintiffs of their federal constitutional right to procedural due process by enacting a law that is unconstitutionally vague, contrary to the rights guaranteed by the First and Fourteenth Amendments to the United States Constitution, contrary to 42 U.S.C. §1983.

### E.  Deprivation of Washington State Constitutional right, guaranteed by article 11, § 11, to be free from local ordinances

COMPLAINT FOR DECLARATORY RELIEF – 19

OAS006-0001 7413713

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

**which conflict with state statutes,**
**(Fifth cause of action)**

113.   By adopting Burien Municipal Code §19.75.030, Burien's ordinance forbids issuance of any temporary use permit for a use that lasts longer than a total of 60 days.  But RCW 35A.21.360(2) provides that a code city "may not enact an ordinance or regulation or take any other action that: … (d) Specifically limits a religious organization's availability to host an outdoor encampment on its property or property controlled by the religious organization to fewer than six months during any calendar year."

114.   Given this conflict, any application that Plaintiffs might file seeking a permit that would authorize a 90-day homeless hosting use, such as the one Plaintiffs previously conducted, would necessarily have to be denied under BMS §19.75.030.  Thus, Burien is insisting that Plaintiffs engage in the useless act of filing an application that Burien asserts it must deny.

115.   Since Burien's local ordinance conflicts with state law, by prohibiting the very same conduct which state law forbids cities to prohibit, Burien's ordinance violates Washington Constitution, article 11, §11.

### F.   Violation of Religious Land Use and Institutionalized Persons Act (RLUIPA) (Sixth Cause of Action)

116.   By adopting and by enforcing laws, policies and customs that purport to make it unlawful for a Church and/or its Pastor to host homeless people on the Church's own property, without first securing a permit from the City, the Defendants have violated Plaintiffs' rights guaranteed by 42 U.S.C. §2000cc.  Defendants have imposed a land use regulation which imposes a substantial burden on the Plaintiffs' religious exercise without demonstrating that that burden is in furtherance of a compelling governmental interest and without demonstrating that the burden imposed is the least restrictive means of furthering that compelling governmental interest.

COMPLAINT FOR DECLARATORY RELIEF – 20

OAS006-0001 7413713

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

117.    Defendants have also violated RLUIPA by imposing a land use regulation in a manner that treats a religious institution on less than equal terms than a nonreligious institution, by exempting Christmas tree lots and produce stands from the Temporary Use Permit code.

**G.      Violation of RCW 35A.21.360**
**(Seventh Cause of Action)**

118.    By adopting and by enforcing laws, policies and customs that purport to make it unlawful for a Church and/or its Pastor to host homeless people on the Church's own property, without first securing a permit from the City, the Defendants have violated Plaintiffs' right guaranteed by RCW 35A.21.360, by imposing a condition which is not necessary to protect public health and safety.

**H.      Violation of RCW 35A.21.360**
**(Eighth Cause of Action)**

119.    By adopting and by enforcing laws, policies and customs that purport to make it unlawful for a Church and/or its Pastor to host homeless people on the Church's own property, without first securing a permit from the City, the Defendants have violated Plaintiffs' right guaranteed by RCW 35A.21.360, by substantially burdening the action of a religious organization regarding the location of a an outdoor encampment for homeless persons on property owned and operated by a religious organization.

COMPLAINT FOR DECLARATORY RELIEF – 21

OAS006-0001 7413713

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

## VI.    RELIEF REQUESTED

Plaintiffs hereby requests that the Court grant the following relief:

1. Entry of Declaratory Judgment stating that requiring a church to apply for and obtain a permit to meet its core religious duty to provide shelter for the unhoused violates:

   a. The Plaintiffs' federal constitutional rights;

   b. The Plaintiffs' state constitutional rights;

   c. The Plaintiffs' statutory rights under RLUIPA; and

   d. The Plaintiffs' statutory rights under RCW 35A.21.360.

2. That Plaintiff be awarded their costs and attorneys' fees as provided for by 42 U.S.C. §1988, RLUIPA, and any other applicable provision of statutory and common law.

3. That the Court grant such other relief as may be just and equitable.

   DATED this 20th day of August, 2024.

*s/ James E. Lobsenz*
James E. Lobsenz #8787


*s/ Mark C. Lamb*
Mark C. Lamb #30134

CARNEY BADLEY SPELLMAN, P.S.
701 Fifth Avenue, Suite 3600
Seattle, WA 98104
Phone: (206) 622-8020
lobsenz@carneylaw.com
lamb@carneylaw.com
Attorneys for Plaintiffs

COMPLAINT FOR DECLARATORY RELIEF – 22

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

OAS006-0001 7413713

# APPENDIX A



# APPENDIX B



City of Burien
400 SW 152nd Street
Suite 300
Burien, WA 98166-1911

P 206.241.4647
F 206.248.5539

burienwa.gov

November 15, 2023

Oasis Home Church
c/o Pastor Mark Miller
520 S 150th St,
Burien, WA 98148

**Subject: Demand Letter – Apply for a Temporary Use Permit for Encampment Operations**

Dear Pastor Miller,

RCW 35A.21.360(2)(A), which authorizes religious organizations to host individuals experiencing homelessness, also recognizes local governments' police powers to protect the public's health and safety under Washington Constitution Article 11, Section 11.

While the City of Burien understands, supports, and welcomes the religious intent behind providing shelter to the unhoused, the Burien Municipal Code requires a temporary use permit before this can be done at your facility.  BMC 19.75.010(1) notes that a temporary use permit is required for unpermitted zoning uses.  Unpermitted encampments pose a potential risk to public health, safety for the unhoused population you are trying to serve, and the environment of the surrounding communities.

To date, the Oasis Home Church has not applied for a temporary use permit for its proposed or existing encampment, even after Burien offered to waive the permit application fee. Oasis Home Church has asserted that applying for a temporary use permit would burden its right to free exercise of religion. Please revisit RCW 35A.21.360(2)(A), which prohibits substantial burdens but not all burdens on religious decisions or actions. Moreover, RCW 35A.21.360 repeatedly references a municipality's responsibility or ability to require permits.  See RCW 35A.21.360(2)(c) and RCW 35A.21.360(8).

The church's failure to submit a temporary use permit application, even with the fee waived, may leave the City of Burien with no choice but to seek imminent legal action.  Please rectify this situation, and consider reading *Open Door Baptist Church v. Clark Cty.*, 140 Wn.2d 143, 995 P.2d 33 (2000) for guidance. Please consult with a licensed attorney to ensure you are acting consistent with the law.

Thank you for your attention to this demand letter, and please submit a temporary use permit application and request a waiver by November 20, 2023, at 3:00 p.m.

Sincerely,

Ndiabou Diagana
Assistant City Attorney

# APPENDIX C

CARNEY
BADLEY
SPELLMAN

Law Offices
A Professional Service Corporation

701 Fifth Avenue, Suite 3600
Seattle, Washington 98104-7010
T (206) 622-8020
F (206) 467-8215
D (206) 607-4121

James E. Lobsenz
Attorney

Email: Lobsenz@carneylaw.com

November 21, 2023

Mr. Garmon Newsom II
Ms. Ndiabou Diagana
Office of the City Attorney for the City of Burien
400 SW 152nd Street, Suite 300
Burien, WA 98166-1911

> Re:   Your demand for a Temporary Use Permit Application

Dear Mr. Newsom and Mr. Diagana:

Thank you for speaking with me yesterday and thank you for sending me a copy of the Temporary Use Permit Application. As I explained on the phone on Monday, when the Church contacted me last week, I was hiking on Whidbey Island and most of the time I was in a state park area where there was extremely poor cell phone coverage. On Friday, I did call and leave a voicemail message for you, and I explained where I was. I understand that you were not able to hear my name on the voicemail I left. I did not receive a call back from anyone on Friday, but again that may have been because I was in an area where cell phone coverage was poor. I also had problems communicating with Pastor Miller because my phone call with him was dropped in the middle of our conversation.

I have now had a chance to look at some of the provisions of the Burien City Code and frankly I am puzzled why you think the laws regarding Temporary Use Permits apply to the Church's use of their property. As I read BMC 19.75.010, it expressly recognizes that a temporary use permit is required only when the intended use of the property is a use which is "not otherwise permitted in the zone."

I have looked at the chart in BMC 19.15.001 ("User Guide") to see what uses are permitted. It explicitly recognizes that religious use of property is a permitted use. The Chart lists "Religious Facility" in the far lefthand column. It cross-references BMC 19.15.005(9) which defines "Religious facility" as follows:

> An establishment, the principal purpose of which is religious worship, and for which
> the principal building or other structure contains the sanctuary or principal place of
> worship, and includes related accessory uses.

It would seem self-evident that the Oasis Home Church is an establishment and that its principal purpose is religious worship. It also seems self-evident that its building and the fenced encampment area is a sanctuary, and that these are places where people practice their religion. Since this is a permitted use, Chapter 19.75 on Temporary Use Permits is not applicable at all.

www.CARNEYLAW.com

OAS006-0001 7394491

November 21, 2023
Page 2

It may be that Burien does not consider the provision of services to homeless people to be "religious conduct" or an aspect of "religious worship." But courts routinely hold that it is. For example, the Second Circuit *rejected* the contention of the City of New York that allowing people to sleep outside on its property is not legitimate religious conduct. The Court recognized that in the view of the Presbyterian Church

> its outdoor sanctuary forms an integral part of its religious mission and that the police's removal of the homeless interferes with the Church's ministry and homeless outreach program. In an affidavit submitted in support of the application for injunctive relief, the Church's homeless liaison states that the Church is "commanded by scripture to care for the last, the lost, and the lonely of this world" and in ministering to the homeless, the Church is "giving the love of God ... There is perhaps no higher act of worship for a Christian."

> We agree with the district court that on the present record, the Church has demonstrated a likelihood of success in establishing that its provision of outdoor sleeping space for the homeless effectuates a sincerely held religious belief and is therefore protected under the Free Exercise Clause.

*Fifth Avenue Presbyterian Church v. City of New York*, 293 F.3d 570 (2nd Cir. 2002).

The Ninth Circuit reached the same conclusion in *Harbor Missionary Church v. City of Buenaventura*, 642 Fed. Appx. 726 (9th Cir. 2016). In that case

> [T]he City told the Church that it needed to obtain a conditional use permit to continue its homeless ministry. In February 2013, the Church applied for a conditional use permit, which the City denied. The Church then filed suit claiming that the City's denial infringed on its religious practices and, pending the lawsuit, sought a preliminary injunction to keep open its ministry doors.

*Harbor Ministry,* 642 Fed. Appx. at 727. The district court denied the preliminary injunction. But the Ministry appealed, and the Ninth Circuit reversed the district court and remanded for further proceedings. Notably, just like the Second Circuit, the Ninth Circuit recognized that the Church had a sincere religious belief that ministering to the homeless was a "sacred duty." The Harbor Church pointed to the same passage of Matthew that the Presbyterian Church cited in the Second Circuit case.

> The Church believes that its homeless ministry is part of its religious duty to serve "the least of these" among us (citing Matthew 25:34-46).

*Id.* at 727.

Given these two decisions, and the unambiguous language of the Burien Municipal Code, it seems clear that the use of Oasis Home Church property for an outdoor homeless encampment is a permitted use under BMC 19.15.001 and 19.15.005(9). Consequently BMC 19.75 is simply not applicable. The Church does not need to apply for permission to engage in a use of its property which is already permitted by these sections of the Code.

November 21, 2023
Page 3

Even if one were to assume that the code sections pertaining to temporary use permit applications did apply, there would still be a constitutional obstacle to use of a permitting system to regulate their practice of religion. Several U.S. Supreme Court cases have held that cities and towns may not require anyone to obtain a permit or a license before engaging in the exercise of their religious freedom because that would constitute a prohibited prior restraint. For example, in *Watchtower Bible v. Village of Stratton*, 536 U.S. 150 (2002), the town prohibited anyone from going door to door without first obtaining a permit. Even though there was no fee charged, the Jehovah's Witnesses refused to apply for a permit. They explained that

> door-to-door canvassing is mandated by their religion. ... [T]he Jehovah's Witnesses "claim to follow the example of Paul, teaching 'publickly, and from house to house.' Acts 20:20. They take literally the mandate of the Scriptures, 'Go ye into all the world, and preach the gospel to every creature.' Mark 16:15. In doing so they believe that they are obeying a commandment of God."

*Watchtower Bible,* 536 U.S. at 160-61.

The Village of Stratton claimed that its permitting law was designed to protect its residents from criminals posing as canvassers in order to defraud people. Even though the record showed that no one who had applied for a permit had ever been denied one, the Court held that the law was an unconstitutional prior restraint. The Court held that "requiring a permit as a prior condition on the exercise of their right" to engage in religious proselytizing imposed an objective and unconstitutional burden on the speech of some citizens holding these religious views. *Id* at 167.

The Court reached a similar result in *Cantwell v. Connecticut,* 310 U.S. 296 (1940) where it reversed a conviction under a State statute which prohibited all persons from soliciting money for any religious cause unless the person had first obtained a certificate of approval from a public official. The official was authorized to refuse to issue such a certificate if he found that the cause being espoused was not a religious one. The State argued that a court could always correct any mistake that the official might make if he improperly denied a certificate. But the Supreme Court held that was not constitutionally sufficient because "the availability of a judicial remedy for abuses in the system of licensing still leaves that system one of previous restraint," which is unconstitutional. *Id.* at 306. Thus, a requirement that a church obtain a conditional use permit before it can exercise its religious mission to serve the homeless is also a constitutionally prohibited prior restraint.[1]

Parenthetically, it should be noted that the Washington State Constitution is even *less* tolerant of prior restraints than the U.S. Constitution. Our state supreme court has said that because it is "expressive," even nude dancing is constitutionally protected. The Court has invalidated statutory licensing schemes for nude dancers because they constitute a forbidden prior restraint. See, e.g., *JJR, Inc. v. City of Seattle*, 126 Wn.2d 1, 891 P.2d 720 (1995) (because licensing scheme did not provide for judicial review *before* dancers' licenses could be revoked or suspended, the statutory licensing scheme constituted a forbidden prior restraint and violated article 1, section 5). If nude dancing cannot

---

[1] *See also Kunz v. New York,* 340 U.S. 290 (1951) (ordinance making it unlawful to hold public worship meetings on the streets without first obtaining a permit from the city police commissioner was an unconstitutional prior restraint).

November 21, 2023
Page 4

be subjected to a licensing scheme that effects a prior restraint, then surely the exercise of the right to freedom of religious practice cannot be subjected to a permitting system that does the same thing.

In sum, the Oasis Home Church would appreciate it if you could explain (1) why you think a conditional use permit is required under the Burien Municipal Code, and (2) assuming for the sake of argument that the Code really does require such a permit, why wouldn't such a statutory requirement be unconstitutional under the Supreme Court's cases such as *Watchtower Bible* and *Cantwell*?

I look forward to hearing from you as soon as possible.

Very truly yours,

CARNEY BADLEY SPELLMAN, P.S.

James E. Lobsenz

OAS006-0001 7394491

# APPENDIX D



City of Burien                  P 206.241.4647          burienwa.gov
400 SW 152nd Street             F 206.248.5539
Suite 300
Burien, WA 98166-1911

November 29, 2023

*Via First Class Mail and
Email to lobsenz@carneylaw.com*

Mr. James E. Lobsenz, Esq.
Carney Badley Spellman, P.S.
701 5th Avenue, Suite 3600
Seattle, Washington 98104

>          Re:     **Reply to Oasis's November 21, 2023, Letter**

Mr. Lobsenz,

Burien has received your letter titled "Your demand for a Temporary Use Permit Application," dated November 21, 2023, in which you argue that "Oasis Home Church is an establishment and that its principal purpose is religious worship." Burien neither questions Oasis's purpose, its religious conduct, nor the sanctity of hosting unhoused people, nor is Burien regulating religious conduct through permits. Burien has previously stated as much in multiple emails sent to Oasis and directly to you during our phone conversation on November 20, 2023. Moreover, Burien has never made the temporary use permit a pre-requisite to Oasis opening its encampment, the encampment is open already. Oasis has never submitted a temporary use permit application, and Burien has never demanded the closure of the encampment. Therefore, Burien declines to entertain constitutional hypotheticals.

Oasis is authorized to host an encampment by RCW 35A.21.360, 42 U.S.C. § 2000cc, the Religious Land Use and Institutionalized Persons Act (RLUIPA), and Washington State Constitution Article I, Section 11. Oasis has the right to host the unhoused and must comply with the law. So far, Oasis has exercised its right to host but has refused to comply with BMC 19.75.010 and obtain a temporary use permit to host an unhoused encampment on its parking lot.

BMC 19.75.010 requires a temporary use permit whenever a use not permitted in a zone is requested or is being expanded beyond a previous approval. Thus, like any other property owner, Oasis must obtain a temporary use permit to host an encampment since encampments are not permitted in any Burien zone. Oasis's refusal to seek a temporary use permit violates the Burien Municipal Code.

RCW 35A.21.360 authorizes religious organizations to host unhoused persons on religious property and cities to regulate such use, require a permit, and impose fees for reviewing and approving the permit applications. As to Burien's ability to require a temporary use permit, RCW 35A.21.360(2)(a) explains that

"a code city may not enact an ordinance or regulation or take any other action that [i]mposes conditions other than those necessary to protect public health and safety and that do not <u>substantially</u> burden the decisions or actions of a religious organization regarding the location of housing or shelter..." (Emphasis added) RCW 35A.21.360 is the statute Oasis attempted to comply with when it notified Burien of its intended public hearing. RCW 35A.21.360(10).

RLUIPA begins not by saying that land use regulations cannot be imposed or implemented regarding religious organizations but by prohibiting the imposition or implementation of land use regulations "in a manner that imposed a <u>substantial</u> burden" on the exercise of religion. (Emphasis added) It is important to understand that Congress could have prohibited any or all burdens but only limited "substantial" burdens. Asking for a temporary use permit to know how, where, how long, and in what fashion the encampment will be run is reasonable, within Burien's Washington State Constitution Article XI, Section 11 authority to protect health and safety, and not a substantial burden.

In *Living Water Church of God v. Charter Twp. Meridian*, 258 F. App'x 729, 736 (6th Cir. 2007), the Sixth Circuit held, "RLUIPA cannot stand for the proposition that a construction plan is immune from a town's zoning ordinance simply because the institution undertaking the construction pursues a religious mission. Although RLUIPA assuredly protects religious institutions in their religious exercise, the statute's language indicates that it is <u>not</u> an exemption from land-use regulations." (Emphasis added) Washington's constitution also carves a narrow limitation to the freedom of religious organizations as it relates to peace and safety, which are protected by land use regulations.

Washington State Constitution, Article I, Section 11 states, "Absolute freedom of conscience in all matters of religious sentiment, belief and worship, shall be guaranteed to every individual, and no one shall be molested or disturbed in person or property on account of religion; but the liberty of conscience hereby secured shall not be so construed as to excuse acts of licentiousness or justify practices inconsistent with the peace and safety of the state." Even Washington's Religious Freedom provision prohibits practices inconsistent with peace and safety. The temporary use permit is a tool that municipalities use to ensure peace and safety.

In sum, religious organizations are subject to local land use regulations. Oasis is subject to Burien's land use regulations. Burien again asks you to advise your client, Oasis Home Church, to apply for a temporary use permit. As previously stated, Burien is willing to waive the permit fees. Finally, any concerns about the temporary use permit time limits are not applicable since Oasis has stated that the encampment will not operate beyond the temporary use permit time limitations. If Oasis intends to host the unhoused for longer than the temporary use permit typically permits, Burien is willing to modify that requirement. Again, Burien encourages, appreciates, and supports the safe and effective support of the unhoused on religious organizations' property.

Sincerely,

Ndiabou Diagana
Assistant City Attorney

# APPENDIX E

CARNEY
BADLEY
SPELLMAN

Law Offices
A Professional Service Corporation

701 Fifth Avenue, Suite 3600
Seattle, Washington 98104-7010
T (206) 622-8020
F (206) 467-8215
D (206) 607-4121

Email: Lobsenz@carneylaw.com

James E. Lobsenz
Attorney

December 7, 2023

Ms. Ndiabou Diagana
Office of the City Attorney for the City of Burien
400 SW 152nd Street, Suite 300
Burien, WA 98166-1911

Re:    Oasis Home Church

Dear Ms. Diagana:

I write in response to your letter of November 29th.

You state that Burien neither questions the Church's religious conduct "nor is Burien regulating religious conduct through permits." But as I explained in my previous letter, that is exactly what Burien is trying to do. In my previous letter I cited *Fifth Avenue Presbyterian Church v. City of New York*, 293 F.3d 570 (2nd Cir. 2002) and I quoted the language of that decision which holds that providing a place for homeless people to sleep is religious conduct. Oasis Home Church, like the New York Presbyterian Church, holds the sincere religious belief that the provision of outdoor space for the homeless is a religious duty and "an integral part of its religious mission." Such conduct is "therefore protected under the Free Exercise Clause." Thus, Burien *is* attempting to regulate religious conduct.

Because BMC 19.15.001 and 19.15.005(9) expressly *permit* religious conduct, the Oasis Home Church's decision to allow the homeless to sleep on their property is a permitted use. The city code only requires a temporary use permit for a use that is "not otherwise permitted." Thus, as I stated in my earlier letter, the city's own laws recognize that the church is *not* required to obtain a temporary use permit.

Your letter states that "BMC 19.75.010 requires a temporary use permit whenever a use [is] not permitted in a zone." But you then ignore the fact that religious uses of property are expressly permitted. You simply assert that "encampments are not permitted in any Burien zone." But that assertion simply ignores the fact that religious "encampments" are expressly permitted when the encampment is operated as an integral part of a religious mission because religious conduct is permitted by the zoning law. In sum, I am afraid we will simply have to disagree on this point.

The City has also completely ignored the second point I made in my letter of November 21. I explained that government cannot require a permit as a condition of exercising the constitutional freedom of religious exercise. I cited two U.S. Supreme Court cases where the Court struck down statutes as prior restraints on freedom of religion. These laws were held unconstitutional because they required a person to obtain a permit or certificate before engaging in religious conduct. You

OAS006-0001 7410553

December 7, 2023
Page 2

have not made any response and have provided no explanation as to why Burien would not also violate the First Amendment if it sought to require a permit before the Oasis Home Church could operate its encampment.

You point to the language of RCW 35A.21.360 which *prohibits* certain kinds of local ordinances. But nothing in RCW 35A.21.360 states that a Washington code city is *allowed* to require any kind of permit before a church can be allowed to engage in religious conduct. And even if some state statute explicitly authorized cities to require such a permit, such a law would be blatantly unconstitutional as *Watchtower Bible v. Village of Stratton* shows.

What RCW 35A.21.360 does say is that code cities may not impose conditions on the hosting of the homeless by a religious organization unless two requirements are met. First, the condition must be "necessary to protect public health and safety." Second, the condition may not "substantially burden the decisions or actions of a religious organization." Both requirements must be met. But Burien cannot satisfy either.

You correctly assert that Burien can impose conditions which are "necessary to protect public health and safety." But you make no effort to explain why requiring a permit is necessary to do that. Instead, Burien offers the same kind of justification which the Supreme Court rejected in *Watchtower Bible*. There the trial court accepted the mayor's testimony as credible and found that the permit law "had been designed to protect the privacy rights of the Village residents, specifically to protect them 'from flim flam con artists who prey on small town populations.'" 536 U.S. at 158. Citing to its previous decision in *Cantwell v. Connecticut*, 310 U.S. 296 (1940), the Court expressly "recognized crime prevention as a legitimate interest served by [licensing or permitting] ordinances". The Court noted that burglars frequently pose as canvassers, either in order that they may have a pretense to discover whether a house is empty and hence ripe for burglary, or for the purpose of spying out the premises in order that they may return later." 536 U.S. at 163. "We have no difficulty concluding, in light of our precedent, that these are important interests that the Village may seek to safeguard through some form of regulation of solicitation activity." *Id.* at 165.

But *despite* the fact that there was a legitimate public safety concern, the Court *still* held that the statute violated the First Amendment because it constituted an invalid prior restraint. The Court held that "requiring a permit as a prior condition on the exercise of the right to speak imposes an objective burden on some speech of citizens holding religious or patriotic views. As our World War II-era cases dramatically demonstrate, there are a significant number of persons whose religious scruples will prevent them from applying for such a license." *Id.* at 167.

In addition, the Court held that a permit ordinance was not likely to be a very effective crime prevention tool. "[C]entral to our conclusion that the ordinance does not pass First Amendment scrutiny is that it is not tailored to the Village's stated interests." *Id.* at 168.

> [I]t seems unlikely that the absence of a permit would preclude criminals from knocking on doors and engaging in conversations not covered by the ordinance. They might, for example, ask for directions or permission to use the telephone, or pose as surveyors or census takers, [Citation]. Or they might register under a false name with

OAS006-0001 7410553

December 7, 2023
Page 3

impunity because the ordinance contains no provision for verifying an applicant's identity or organizational credentials.

*Id.* at 169. The Village also argued that its law was a means of protecting residents' privacy. But the Court noted that there were "less intrusive and more effective measures to protect privacy" and that "[t]he annoyance caused by an uninvited knock on the front door is the same whether or not the visitor is armed with a permit." *Id.* at 168-69.

With respect to our present disagreement, it is obvious that requiring a church to submit Burien's Temporary Use Permit application is not "necessary" to safeguard public health and safety. The City's application only asks three questions which might conceivably be related to safety and health hazards. These questions are:

Is electrical power needed: __ Yes ___ No.

Is liquor being sold? __ Yes. ___No.

Is use of public right-of-way required? __ Yes. ___ No.

The Oasis Home Church has no problem with supplying you with the answers to these questions. The answers are as follows. No, no, and no. The Church already receives electrical power and the Church pays for all the electricity that it uses. No liquor is being sold. No use of any public right-of-way is required.

Perhaps Burien thinks that having this information was "necessary "to "protect public health and safety." If so, Burien now has that information. But Burien cannot plausibly maintain that the issuance of a piece of paper bearing the title "Temporary Use Permit" is now *"necessary"* to protect either public safety or public health.

What the Church objects to is the city's contention that it has the power to prevent the Church from operating its outdoor homeless encampment by requiring that it obtain a permit first. The City has no such power because it is constitutionally prohibited from requiring a permit as a condition of operation. Were the Church to concede that the City had that power, then the City would be able to prevent it from exercising its religion and the Church would have to initiate a lengthy appeal procedure in the hopes that the denial of a permit would be reversed.

Such an appeal procedure could take a very long time. "Any appeal" of the "denial of the initial application, shall be to the city manager or a designee." BMC 19.75.020. If that appeal is denied, then, and only then, could the Church obtain judicial review of the City's decision. No time limits are set for either step of the appeal. Nothing would prevent the City Manager from taking 2, 3, or 6 months before rendering a decision on the Church's appeal. The following appeal to a Superior Court could easily take more than a year. During the time that the appeal was pending and not yet finally resolved the Church would, according to Burien, be prohibited from operating the outdoor shelter.

It should be obvious that some decisions to allow a temporary homeless encampment have to be made in a very short period of time. Imagine a situation where on a Monday in January the U.S.

December 7, 2023
Page 4

Weather Bureau announces that temperatures below 30 degrees Fahrenheit are expected to start on Wednesday night and will likely continue for three to five more days. The Church decides that during those 3-5 days it will host an encampment for the homeless and will permit the homeless to sleep both outdoors and indoors on its property. If the Church submits its application for a temporary use permit on Monday afternoon and Burien has not issued any decision by Wednesday night, then must the Church refrain from going forward until the City decides whether to get the permit?

What if the application is submitted on Monday, speedily denied on Tuesday, and the Church appeals to the City Manager on Wednesday morning? If the City Manager has not issued a decision by Wednesday evening is the Church forbidden to go forward with the encampment?

As I pointed out in my earlier letter, the Washington Constitution has a very strict prohibition against prior restraints. Even in the context of something like nude dancing, which "clings to the edge of protected expression," the Supreme Court has struck down licensing laws which do not *guarantee* very speedy *judicial* review:

> [T]he licensing of adult entertainment carries with it the possibility of unwarranted censorship and, therefore, must contain sufficient procedural safeguards. Because we must be exacting in safeguarding protected expression, we find that a stay of adult entertainment license revocation and suspension pending judicial review is the minimum constitutionally permissible safeguard.

*JJR Inc. v. Seattle*, 126 Wn.2d 1, 9, 891 P.2d 720 (1995). Because Seattle's ordinance did not require "a mandatory stay of the [license] revocation and suspension pending judicial review," the Supreme Court struck the licensing ordinance as unconstitutional *"in the context of adult entertainment licenses."* *Id.* at 10 (italics added). (Later, in *Ino, Inc. v. City of Bellevue*, 132 Wn.2d 103, 123, 937 P.2d 154 (1997), the Supreme Court held that a law providing for a fourteen-day waiting period for an adult entertainment license was an unconstitutional prior restraint.)

The exercise of religion does not "cling to the edge" of either the First Amendment or Article 1, section 5, or Article 1, section 11. It is a jealously guarded fundamental right as *Watchtower Bible* illustrates. Moreover, under *O'Day v. King County*, 109 Wn.2d 796, 804, 749 P.2d 142 (1988), article 1, section 5 *categorically prohibits any* prior restraint on constitutionally protected conduct.

Even if the *less* restrictive constitutional rule applicable to nude dancing were applicable to religious exercise, Burien *still* could not require a church to obtain a permit before it could serve Christ by serving the homeless. The very existence of such a licensing scheme would, as in *JJR*, "carr[y] with it the possibility of unwarranted censorship and therefore" would have to contain procedural safeguards. And at the very least, "the minimum constitutionally permissible safeguard" against "censorship" of religious exercise would be a stay of any enforcement of the temporary use permit law pending judicial review. Since Burien's temporary use permit ordinance does not contain a mandatory stay of enforcement pending judicial review, it is clearly unconstitutional "in the context of permits" to exercise one's fundamental right to free exercise of religion.

Even if it were constitutional for Burien to have a law that required a church to get a permit in order to lawfully operate a homeless encampment, Burien's current law would be blatantly

OAS006-0001 7410553

December 7, 2023
Page 5

unconstitutional for yet another reason.  It is settled constitutional law that a licensing statute which gives a government official unfettered discretion to license the exercise of a constitutional right is an unconstitutional prior restraint. *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965); *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 770, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988).  In *Cantwell* the Court struck down a statute which made it a crime to solicit money for religious or charitable purposes unless the person had been approved by the secretary of the public welfare council. That statute stated in pertinent part:

> Upon application of any person in behalf of such cause, the secretary shall determine whether such cause is a religious one or is a bona fide object of charity or philanthropy and conforms to reasonable standards of efficiency and integrity, and if he shall so find, shall approve the same and issue to the authority in charge a certificate to that effect.

*Cantwell*, 310 U.S. at 302.  Members of the Jehovah's Witnesses violated this law by soliciting without ever having even applied for a certificate of approval. The Court struck down the statute, both because it was an unconstitutional prior restraint, and because it gave unfettered discretion to a government official to decide what constituted the exercise of religion.

> [T]he Act requires an application to the secretary of the public welfare council of the State; that he is empowered to determine whether the cause is a religious one; and that the issue of a certificate depends upon his affirmative action. . . . He is authorized to withhold his approval if he determines that the cause is not a religious one. ***Such a censorship of religion as a means of determining its right to survive is a denial of liberty protected by the First Amendment* ....**
>
> The State asserts that if the licensing officer acts arbitrarily, capriciously, or corruptly, his action is subject to judicial correction. ....
>
> [T]he availability of a judicial remedy for abuses in the system of licensing still leaves that system one of previous restraint which, in the field of free speech and press, we have held inadmissible.  A statute authorizing previous restraint upon the exercise of the guaranteed freedom by judicial decision after trial is as obnoxious to the Constitution as one providing for like restraint by administrative action.

*Cantwell*, at 305-06, (emphasis added.

> [T]o condition the solicitation of aid for the perpetuation of religious views or systems upon a license, the grant of which rests in the exercise of a determination by state authority as to what is a religious cause, is to lay a forbidden burden upon the exercise of liberty protected by the Constitution.

*Cantwell*, at 307.

Upon reflection, I believe you will see that you are asserting the same censorial power that the Court held unconstitutional in *Cantwell*.  *Cantwell* held that Connecticut could not give a government official the power to decide what was a real religion or a real religious cause.  In your

December 7, 2023
Page 6

most recent letter, you have asserted that what the Church is doing – hosting an encampment for the homeless – is not a religious activity. Presumably that is the reason you feel you can ignore the fact that your own zoning law currently permits religious uses of property throughout the City. But Burien has no such power, just as the State of Connecticut had no such power.

Finally, Burien Municipal Code §19.75.090(1) purports to put the burden on the permit "applicant [to] demonstrate that the proposed temporary use will not be materially detrimental to the public welfare." As applied to proposed religious uses of property, this statute is blatantly unconstitutional. First, a city cannot put the burden on anyone to prove that his exercise of a constitutionally protected right will not be "detrimental" to the public. On the contrary, when a fundamental constitutional right is affected, the burden is always on government to prove the existence of a compelling governmental interest which justifies restriction of the exercise of that right, and that there is no less restrictive alternative means of accomplishing that compelling state interest. And second, Burien's statutory standard of "materially detrimental" is unconstitutionally vague. That subjective phrase provides no meaningful guidance and thus no church could know what that phrase encompassed. *See, e.g., Alsager v. District Court*, 406 F.Supp. 10, 20 (S.D. Iowa 1975) (phrase "conduct detrimental to the physical or mental health or, morals of their children" held void for vagueness and thus violated parents' fundamental due process right to the care and custody of their children).

You have asserted that the City's move is to protect public health and safety. If you believe the present encampment presents a safety or health hazard, please share that concern with the Church. The Church certainly will cooperate with any effort to cope with any real safety or health hazard. But the Church continues to believe that your effort to control it, by precluding it from carrying out a religiously imposed duty that is central to the teachings of Christ, is unlawful because it violates your own zoning code, and both the state and federal constitutional guarantees of freedom of religious exercise.

Very truly yours,

CARNEY BADLEY SPELLMAN, P.S.

*James E. Lobsenz*

James E. Lobsenz

# APPENDIX F


**Burien**

# Temporary Use Permit Application

Page 2 of 2

| (X) | DEPARTMENT REVIEW REQUIRED | APPROVAL | COMMENTS/CONDITIONS | REVIEW DATE |
|---|---|---|---|---|
| | Building Department | Yes ☐  No ☐<br>Reviewed by:<br>_____ | | |
| | Fire Department | Yes ☐  No ☐<br>Reviewed by:<br>_____ | | |
| | Planning Department | Yes ☐  No ☐<br>Reviewed by:<br>_____ | | |
| | Police Department | Yes ☐  No ☐<br>Reviewed by:<br>_____ | | |
| | Public Works Department (including right-of-way review) | Yes ☐  No ☐<br>Reviewed by:<br>_____ | | |
| | Parks Department | Yes ☐  No ☐<br>Reviewed by:<br>_____ | | |

**Exemptions from permit requirements (BMC 19.75.020):**
(1) The following uses are exempt from requirements for a temporary use permit when located in the CN, CI, CC, CR, DC, SPA-1, SPA-3, O, AI or I zones for the time period specified: a) uses not to exceed a total of 30 days each calendar year – Christmas tree lots and produce stands; b) uses not to exceed a total of 14 days each calendar year: amusement rides, carnivals, or circuses, community festivals, and parking lot sales.
(2) Any use not exceeding a cumulative total of two days each calendar year.
(3) Any community event held in a public park and not exceeding a period of seven days.

## SIGNATURE

I, _____, declare that I am the owner of the property involved in this application, and that the foregoing statements and answers herein contained, and the information herewith submitted are in all respects true and correct to the best of my knowledge and belief. I designate _____ to act as my agent with respect to this application. I agree to reimburse the City of Burien for the costs of professional Engineers and other Consultants hired by the City to review and inspect this proposal when the City is unable to do so with existing in-house staff.


Date: _____          Signature: _____

# APPENDIX G



City of Burien
400 SW 152nd Street
Suite 300
Burien, WA 98166-1911

P 206.241.4647
F 206.248.5539

burienwa.gov

## BMC 1.15.120 NOTICE OF CIVIL VIOLATION

**Person(s) Responsible for Violation(s):**  Pastor Mark Miller; Burien Free Methodist Church dba Oasis Home Church

**Address:**  520 South 150th Street
Burien, WA 98148

**Location of Violation(s):**  520 South 150th Street
Burien Free Methodist Church dba
Oasis Home Church
Sunnydale Village

**Parcel Numbers:**  1760600174, 1760600177, 1760600178, 1760600179, 1760600185

**Date of Violation(s) – 1st observed:**  November 13, 2023
**Related CAR:**  CE 23-04127
**Effective Date:**  November 16, 2023
**Date issued:**  December 7, 2023

On the date and at the location noted above, the Person(s) Responsible were found in violation of the following Burien Municipal Code "BMC" or regulations:

1. **BMC 8.45.015**
2. **BMC 19.75.010**
3. **RCW 35A.21.360**
4. **BMC 19.15.010**
5. **BMC 1.15.080**

BMC 1.15.020 defines a "Person responsible for the violation" or "violator" as a person who has ownership or legal control of the property that is subject to regulation; an occupant or other person in control of the subject property; "or any person who created, caused, participated in, or has allowed a violation to occur."

Contact the undersigned to state how you intend to abate, correct, or fix these violations.

## I. VIOLATION(S) OR NUISANCE(S) ON THE PROPERTY

**FIRST VIOLATION**

**BMC 8.45.015,** entitled *Declaration of nuisance*, states: *All violations of city of Burien ordinances are found and declared to be detrimental to the public health, safety, and welfare and are further found and declared to be nuisances. It is unlawful and a violation of this chapter, whether by act or omission, to cause, create, maintain, suffer, or allow a nuisance to occur, exist, or remain. Each day any person allows or fails to abate such nuisance after notice shall constitute a separate violation. Nuisances create public harm. Prevention and correction of nuisances are necessary to prevent public harm.*

BMC 8.45.020(5), entitled *Definitions*, defines "Nuisance" as:
(a) A violation of any city of Burien ordinance.
(b) Doing an act, omitting to perform any act or duty, or permitting or allowing any act or omission, which annoys, injures, or endangers the comfort, repose, health, or safety of others, is unreasonably offensive to the senses, or which obstructs or interferes with the free use of property so as to interfere with or disrupt the free use of that property by any lawful owner or occupant; or the existence of the aforementioned in this subsection as defined in BMC 8.45.020(5)(c).

**Factual Allegations:**
Oasis Home Church's ("Oasis") unpermitted and unlawful encampment prevents Burien (including police, fire, code enforcement, and human services) from inspecting and ensuring safety and public health (i.e., ingress/egress for emergency personnel, access to bathrooms and handwashing stations, security, and proper disposal of waste and refuse).

Oasis's failure to apply for a temporary use permit prevents Burien from assisting the unhoused and thereby annoys, injures, disrupts, and endangers the community's comfort, health, repose, and safety and prevents Burien from protecting health and safety under Washington State Constitution Article XI, Section 11.

**SECOND VIOLATION**

**BMC 19.75.010,** entitled *Uses Requiring Temporary Use Permits*, states:
Except as provided by BMC 19.75.020, a temporary use permit shall be required for:
1. Uses not otherwise permitted in the zone that can be made compatible for periods of limited duration and/or frequency;
2. Limited expansion of any use that is otherwise allowed in the zone but which exceeds the intended scope of the original land use approval.

**Factual Allegations:**

Oasis has operated as a church without encampments for more than 20 years. According to the Washington State Department of Revenue, Oasis obtained and has maintained a non-profit business license since 2004.

At a public meeting on or about November 5, 2023, Oasis, through a contractor or agent, informed neighbors that it would host a temporary homeless encampment for 90 days.

On or about November 16, 2023, King County Sheriffs stated that Oasis began hosting an encampment on November 6, 2023. On November 20, 2023, Oasis or an Oasis agent or contractor confirmed that people were camping at Oasis's parking lot despite Oasis not having a temporary use permit.

BMC 19.75.010 requires a temporary use permit whenever a use is not permitted in a zone or is being expanded beyond a previous approval. Oasis is in a Multi-family residential zone. "Encampments" or "temporary encampments" are not listed uses and are prohibited in Multi-family residential zones.

Like all other property owners, religious or not, Oasis must obtain a temporary use permit to host an encampment or camp since encampments or camps are prohibited in Burien residential zones. Oasis's decision to host an encampment without applying for or obtaining a permit, despite Burien's offer to waive the $428 application fee and any additional costs, is unlawful and potentially dangerous to the health and safety of those Oasis seeks to help and the surrounding community. Oasis's refusal to apply for a temporary use permit prevents Burien from ensuring community peace and safety and results in Oasis being treated more favorably than other entities, religious organizations or otherwise, that seek to engage in a use not permitted in a Multi-family residential zone.

**THIRD VIOLATION**

**RCW 35A.21.360**, entitled *Hosting the homeless by religious organizations – When authorized – Requirements – Prohibitions on local actions*, states in pertinent parts:

(2) Except as provided in subsection (7) of this section, a code city may not enact an ordinance or regulation or take any other action that:
 (a) Imposes conditions other than those necessary to protect public health and safety and that do not <u>substantially</u> burden the decisions or actions of a religious organization regarding the location of housing or shelter, such as an outdoor encampment, ..., for homeless persons on property owned or controlled by the religious organization; (Emphasis added)
 ***
 (c) Imposes permit fees in excess of the actual costs associated with the review and approval of permit applications. A code city has discretion to reduce or waive permit fees for a religious organization that is hosting the homeless;

**Factual Allegations:**

On October 30, 2023, the City of Burien learned of a letter issued by Oasis's agent and/or contractor to community members (and not the Burien City Council) warning that Oasis intended to host a temporary encampment for the unhoused under the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. §§ 2000cc, *et. seq.* and RCW 36.01.290, *Hosting the homeless by religious organizations—When authorized—Requirements—Prohibitions on local actions.* In response to learning of Oasis's intent, Burien informed Oasis that the applicable statute is RCW 35A.21.360, and that Oasis had to give Burien notice of the required public meeting in compliance with RCW 35A.21.360(10). Parenthetically, the statutes are identical, except RCW 36.01.290 refers to counties, and RCW 35A.21.360 refers to code cities.

On or about November 1, 2023, Oasis and its agent or contractor emailed Burien advising of Oasis's plan under RCW 35A.21.360 to have a "community meeting" to discuss Oasis hosting a homeless encampment. After receiving the email, Burien has reminded Oasis multiple times that, besides having the public meeting, RCW 35A.21.360 authorizes code cities to regulate homeless encampments, require a land use permit, and impose fees for reviewing and approving the permit applications, RCW 35A.21.360(2). Oasis appears to believe it is not bound by RCW 35A.21.360 despite relying on that statute for notice purposes and to assert its right to host an encampment.

In addition, after RCW 35A.21.360, under *"Notes. Findings – Intent – 2020 c 223* refers to the note after RCW 36.01.290, the county equivalent to RCW 35A.21.360. In the note after RCW 36.01.290, under *Intent – Construction – 2010 c. 175*, it states, "Nothing in this act is intended to change applicable law or be interpreted to prohibit a county, city, town, or code city from applying <u>zoning and land use regulations</u> allowable under established law to real property owned by a religious organization, regardless of whether the property owned by the religious organization is used to provide shelter or housing to homeless persons." (Emphasis added).

Concerning RLUIPA, it is intended to protect the exercise of religion from discrimination. 42 U.S.C. § 2000cc(b). RLUIPA begins not by saying that land use regulations cannot be imposed or implemented regarding religious organizations, but by prohibiting the imposition or implementation of land use regulations "in a manner that imposed a <u>substantial</u> burden" on the exercise of religion. It is important to understand that Congress could have prohibited any or all burdens but only limited "substantial" burdens. Burien's request for a temporary use permit to know how, where, how long, and in what fashion the encampment will be run is reasonable, within its police powers authority, and not a substantial burden.

Contrary to Oasis's position, religious organizations must comply with state and municipal laws that are not substantially burdensome. Oasis's failure to comply with RCW 35A.21.360 and BMC 19.75.010 by refusing to obtain a temporary use permit as required under Burien's zoning and land use regulations is an unlawful violation of the Burien Municipal Code. The

refusal to apply has not given Burien the opportunity to waive the fees or address any other concern that Oasis may have.

## FOURTH VIOLATION

**BMC 19.15.010**, entitled *Multi-Family Residential Zones*, does not list "encampments" or "temporary encampments" as an allowed use in a Multi-family residential zone. Only those uses listed in the use zone charts may be allowed in Multi-family residential zones, subject to meeting all applicable requirements of the zoning code and other applicable health and safety regulations. As explained by,

> **BMC 19.05.060**, entitled *Permitted and prohibited uses*, which states in pertinent part: Uses allowed in a specific zone are listed in the use zone chart for that zone in BMC 19.15. Any use or activity of land or structures that is <u>not listed</u> in the applicable use zone chart in BMC 19.15 is <u>prohibited</u> and shall not be established...; (Emphasis added) and

> **BMC 19.05.040**, entitled *Conformity with this Code required,* requires that:
> 1. No use or structure shall be established, substituted, expanded, constructed, altered, moved, maintained or otherwise changed except in conformance with this Code.
>
> 3. All land uses and development authorized by this Code shall comply with all other regulations and/or requirements of this Code and any other local, state or federal agency that has jurisdiction over land uses and development. Where a difference exists between this Code and other regulations, the more restrictive requirements shall apply.

**Factual Allegations:**
On or about November 16, 2023, King County Sheriffs stated that Oasis began hosting an encampment on November 6th, 2023. On November 20, 2023, Oasis or an Oasis agent or contractor confirmed that people were camping at Oasis's parking lot despite Oasis not having a temporary use permit. The observed and stated intent of the use includes providing services to unhoused populations, including but not limited to shelter, secure fencing, porta-potties, hand washing stations, etc.

All of Oasis's parcels are in a Multi-family residential zone. No residential zones in Burien list or permit an "Encampment" or "temporary encampment." Neither Oasis nor its agent or contractor have applied for a temporary use permit to host an "encampment" or "temporary encampment" or to permit or expand the scope of Oasis's original land use as a church or religious facility.

## FIFTH VIOLATION

**BMC 1.15.080**, entitled *Violations*, states:
(1) The violation of any regulation shall be unlawful.

**Factual Allegations:**

On or about November 16, 2023, King County Sheriffs stated that Oasis began hosting an encampment on November 6th, 2023. On November 20, 2023, Oasis or an Oasis agent or contractor confirmed that people were camping at Oasis's parking lot despite Oasis not having a temporary use permit. The observed and stated intent of the use includes providing services to unhoused populations, including but not limited to shelter, secure fencing, porta-potties, hand washing stations, etc.

"Encampment" or "temporary encampment" uses are not specifically listed as an allowed use in the Multi-family residential zone under BMC 19.15.010 and, absent a temporary use permit, is prohibited.

## II. REQUIRED CORRECTIVE ACTION

1. Resolve or correct all violations immediately. Penalties accrue daily for each violation.
2. Immediately apply for a temporary use permit as allowed by BMC Chapter 19.75 (Temporary Use Permits). You may contact the Community Development Department: David Johanson, Senior Planner (206) 248-5522.

## III. DATE FOR COMPLIANCE – PENALTIES

UNDER BMC 1.15.120(3)(d) YOU MUST RESPOND TO THIS NOV BY **December 28, 2023 ("Response Date"),** BY DOING ONE OF THE FOLLOWING:

1. Apply for a temporary use permit; applications are filed online at https://www.mybuildingpermit.com;
2. Pay any fine and correct the violation(s);
3. Enter into and comply with a voluntary correction agreement with Burien;
4. Request a mitigation hearing and correct the violation; or
5. Request a hearing to contest the violation.

## IV. PENALTIES

According to BMC 1.15.120(2), if you fail to respond to this notice of civil violation by the Response Date above, monetary penalties of $125.00 for the first violation and $250.00 for a second or subsequent violation of the same nature or a continuing violation shall accrue for each day or portion thereof that each violation continues beyond the Effective Date, not including fees, costs, and assessments.

According to BMC 1.15.120(3)(e), your failure to respond to this notice or failure to attend any hearing shall result in the violation being deemed committed without requiring Burien to take further action, and the monetary penalty specified herein shall be due. If you wish to avoid penalties but desire additional time for compliance, you must submit a written request for an extension before the response date to the code enforcement officer.

If you pay the monetary penalty, you are still obligated to abate, correct, or fix the violation(s). Burien may perform the abatement required upon noncompliance with the terms of an un-appealed notice of violation, a voluntary correction agreement, or a final order of the hearing examiner. Failure to correct any violation, pay fines, or respond to this notice may result in criminal charges, additional NOVs, and financial expenses, including but not limited to the

payment of abatement costs and expenses that may be entered upon the tax rolls against the property and become due as a part of the general taxes that year with interest.

## V. <u>RIGHT TO APPEAL</u>

The recipients of this Notice of Civil Violation may appeal such NOV or order to the hearing examiner within fourteen (14) calendar days of the service date.

**See BMC 1.15.130 "Response to notice of civil violation" on the following page.**

Upon receipt of this Notice of Civil Violation, please contact the undersigned with the City of Burien.

Issued by: _____
Jeffrey D. Watson, Planning Representative

Issued by: _____
Joseph Stapleton, Building Representative



City of Burien
400 SW 152nd Street
Suite 300
Burien, WA 98166-1911

P 206.241.4647
F 206.248.5539

burienwa.gov

### 1.15.130 Response to notice of civil violation.

(1) Generally. A person who has been served with a notice of civil violation must respond to the notice within fourteen (14) days of the date the notice is served or within such other period as specified in the notice of civil violation. A person may respond to the notice of civil violation by:

    (a) Paying the amount of the monetary penalty as set forth in the notice of violation. Partial payment or payment using a rejected check for insufficient funds shall not be deemed payment under this subsection. Payment of the fine shall not relieve the person or entity responsible for the violation from the duty to correct or abate the violation. Additional notices of violation may be issued if the violation goes uncorrected.

    (b) Entering into a voluntary correction agreement with the City.

    (c) Contesting the notice of civil violation by requesting a contested hearing in writing and sending the request to the City as described in subsection (2) below.

    (d) Seeking to mitigate the monetary penalty by requesting a mitigation hearing to explain the circumstances surrounding the violation. The request to mitigate must be made in writing and sent to the City with a $100 filing fee as described in subsection (2) below. Requesting to mitigate the penalty shall not relieve the person responsible for the violation from the duty to correct or abate the violation. Additional notices of violation may be issued if the violation goes uncorrected.

(2) Method of response. The person or entity to whom a notice of civil violation has been issued may respond by mailing or hand-delivering the response to the City Clerk. Mailed responses must be received no later than the fourteenth (14th) day from the date of service of the notice of violation or the other day specified in the notice of violation. Hand-delivered responses must be brought to the City Clerk no later than 4:30 p.m. on the fourteenth (14th) day after service or such other day as specified in the notice of violation, provided that, where the fourteenth or other specified day falls on a weekend or holiday, the deadline shall be extended to the next regular business day. Telephone, facsimile, or email responses shall not satisfy the requirements of this section. The response deadline may be stayed for a time certain by the code enforcement officer if the responsible person or entity is engaged in active discussions with the code enforcement officer and the code enforcement officer determines there is a reasonable probability that such discussions may result in compliance.

(3)  If the person to whom the notice of civil violation is issued fails to respond as required in the notice of civil violation and this Chapter, the violation(s) shall be deemed committed without requiring further action by the City or the City's Hearing Examiner, and the person to whom the notice of civil violation was issued shall owe the monetary penalty indicated.

In re: Notice of Civil Violation

OASIS HOME CHURCH

FILE NO. CE 23-04127

DECLARATION OF MAILING

I, JEFFREY WATSON, declare and states as follows:

That I am a citizen of the United States of America, of legal age and competency and not a party to this action.

On **December 7, 2023**, I legally served by regular and certified U.S. first class mail the Notice of Civil Violation in the above referenced action upon the following individual(s) at the address(es) listed below:

Pastor Mark Miller
Oasis Home Church
520 South 150th Street
Burien, WA 98148

James E. Lobsenz
Carney Badley Spellman, P.S.
701 Fifth Avenue, Suite 3600
Seattle, WA 98104

I certify under penalty of perjury under the laws of the State of Washington that the foregoing statements are true and correct to the best of my knowledge.

DATED this 7th day of December 2023.

_____

DECLARATION OF MAILING          - 1

**CITY OF BURIEN**
400 SW 152nd St., Ste. 300
Burien, WA 98166-1973
(206) 248-5531
(206) 248-5539 FAX

# APPENDIX H

On Dec 12, 2023 at 1:20 PM -0800, Jeffrey Watson <JeffreyW@burienwa.gov>, wrote:

Paster Miller:

I'm contacting you to let you know the City of Burien needs to conduct an inspection in connection with the needed Temporary Land Use Permit for the homeless encampment on the Oasis Church site. We would like to have inspectors from the City and King County Fire District #2 visit the site tomorrow, Wednesday. The inspection will enable the City to process a Temporary Use application expeditiously, once it is submitted. Please let me know if tomorrow will work for you. Thank you.

Jeff Watson

Jeffrey Watson
Interim Community Development Director

## City of Burien
206-248-5501 Office
206-300-7934 City Cell
JeffreyW@burienwa.gov
**Burienwa.gov**

NOTICE OF PUBLIC DISCLOSURE: This e-mail account is public domain. Any correspondence from or to this e-mail account may be a public record. Accordingly, this e-mail, in whole or in part, may be subject to disclosure pursuant to RCW 42.56, regardless of any claim of confidentiality or privilege asserted by an external party.

1

# APPENDIX I

**From:**        Mark Miller <mmiller@oasishomechurch.com>
**Sent:**        Wednesday, December 13, 2023 7:56 AM
**To:**         Jeffrey Watson
**Subject:**    Re: Temporary Land Use Permit

Hey Jeff,

At this time we would not be open to an inspection from the City. We are reaching out to King County Fire District #2 and will be scheduling a walkthrough.

Your email presumes the Church will be submitting a temporary use permit.

We will not, for the reasons previously stated by our counsel, be asking the City for advance permission to conduct a core expression of our faith.

We are open to discussing a memorandum of understanding with the City, as contemplated by RCW 35A.21.360. If the City wishes to pursue this collaborative approach, as opposed to its current enforcement action, please advise, or send over a proposed MOU.

Thank you for reaching out.

Sincerely,
Pastor Mark Miller
Oasis Home Church

NOTICE OF PUBLIC DISCLOSURE: This e-mail account is public domain. Any correspondence from or to this e-mail account may be a public record. Accordingly, this e-mail, in whole or in part, may be subject to disclosure pursuant to RCW 42.56, regardless of any claim of confidentiality or privilege asserted by an external party.

# APPENDIX J

**From:** Jeffrey Watson <JeffreyW@burienwa.gov>
**Date:** Dec 13, 2023 at 4:43 PM -0800
**To:** Mark Miller <mmiller@oasishomechurch.com>
**Subject:** RE: Temporary Land Use Permit

Pastor Miller:

Thank you for responding so quickly. As you requested below, consistent with RCW 35A.21.360, attached is a proposed memorandum of understanding for your review.

If agreeable, please sign and return it as soon as possible.

Thank you,

Jeff Watson

Jeffrey Watson
Interim Community Development Director

**City of Burien**
206-248-5501 Office
206-300-7934 City Cell
JeffreyW@burienwa.gov
**Burienwa.gov**

1

# APPENDIX K

MEMORANDUM OF UNDERSTANDING
between
City of Burien and Burien Free Methodist Church dba Oasis Home Church
Regarding Hosting a Homeless Encampment on Religious Property – (RCW 35A.21.360)

This Memorandum of Understanding "MOU" is dated as of December 13, 2023 ("Effective Date") and entered by and between the City of Burien, Washington, a non-charter optional municipal code city hereinafter referred to as "Burien," and Burien Free Methodist Church dba Oasis Home Church, hereinafter referred to as "Oasis," and collectively referred to as "Parties."

WHEREAS, in a December 13, 2023 email to the City of Burien, Oasis stated a willingness to discuss and presumably enter into a memorandum of understanding under RCW 35A.21.360 to address the outdoor encampment at its religious facility;

WHEREAS, Oasis has stated that it intends to conduct a core expression of Oasis Home Church and its members' faith by providing a sanctuary or a shelter for the unhoused;

WHEREAS, Burien has seen an extraordinary rapid growth in the homeless and appreciates Oasis's willingness to help the unhoused population;

WHEREAS, RCW 35A.21.360(1) authorizes religious organizations to host the homeless on their property;

WHEREAS, RCW 35A.21.360(3) provides that a code city may enter into a memorandum of understanding to protect the public health and safety of both the residents of the hosting organization and the residents of the code city, and sets a threshold of what must be contained in the memorandum of understanding;

WHEREAS, the Washington Legislature ENGROSSED SUBSTITUTE HOUSE BILL 1754 of June 11, 2020 (*Religious Organizations – Hosting Of The Homeless*) encourages local jurisdictions and religious organizations to work together collaboratively to protect the health and safety of residents and the surrounding community;

WHEREAS, Burien encourages, appreciates, and supports the safe and effective support of the unhoused on religious organizations' property;

NOW, THEREFORE, Oasis and Burien hereto agree as follows:

1. Consistent with RCW 35A.21.360(3)(b), Oasis will
    a. protect and recognize a resident's right in an outdoor encampment to seek public health and safety assistance,

b. protect and recognize a resident's right in an outdoor encampment to access social services on-site,

c. protect and recognize the right of a resident in an outdoor encampment to directly interact with the host religious organization (Oasis), including the ability to express any concerns regarding the managing agency to the religious organization, and

d. develop and enforce a written code of conduct agreed to by the managing agency, Oasis, and all volunteers working with outdoor encampment residents.

2. Pursuant to RCW 35A.21.360(4), Oasis will "ensure that the code city or local law enforcement agency has completed sex offender checks of all adult residents and guests."

3. Pursuant to RCW 35A.21.360(5), Oasis will utilize Washington's homeless client management information system, as provided for in RCW 43.185C.180.

4. The Parties agree to work cooperatively and in good faith and to take such reasonable action(s) or precaution(s) necessary to effectuate the purpose of this agreement.

5. This MOU may be terminated at any time by either party.

6. Any notices provided to any Party in connection with this Agreement shall be directed to the agents listed below:

City of Burien contact is:                    Burien Free Methodist Church dba Oasis
                                              Home Church contact is:


DATED this _____ day of _____, 2023.


CITY OF BURIEN, WASHINGTON                 BURIEN  FREE  METHODIST  CITY  OF  BURIEN,
WASHINGTON                                 BURIEN FREE METHODIST CHURCH
                                           dba OASIS HOME CHURCH

By: _____           By: _____

Name: _____            Name: _____

Title: _____          Title:_____

Date: _____           Date: _____

# APPENDIX L

MEMORANDUM OF
UNDERSTANDING
between
City of Burien and Burien Free Methodist Church dba Oasis Home Church
Regarding Hosting a Homeless Encampment on Religious Property – (RCW
35A.21.360)

This Memorandum of Understanding "MOU" is dated as of December 13__, 2023 ("Effective Date") and entered by and between the City of Burien, Washington, a non-charter optional municipal code city hereinafter referred to as "Burien," and Burien Free Methodist Church dba Oasis Home Church, hereinafter referred to as "Oasis," and collectively referred to as "Parties."

WHEREAS, in a December 13, 2023 email to the City of Burien, Oasis encouraged Burien to stated a willingness to discuss and presumably enter into a memorandum of understanding under RCW 35A.21.360 to address the outdoor encampment at its religious facility;

WHEREAS, the City of Burien withdraws, with prejudice, its notice of violation issued on December 7, 2023 and agrees Oasis is not required to apply to Burien for a permit before hosting a homeless encampment on its property;

WHEREAS, Oasis has stated that it intends to conduct a core expression of Oasis Home Church and its members' faith by providing a sanctuary or a shelter for the unhoused;

WHEREAS, Burien has seen an extraordinary rapid growth in the homeless and appreciates Oasis's willingness to help the unhoused population, including those unhoused persons displaced by recent actions of Burien in parks;

WHEREAS, the First Amendment to the United States Constitution, Article 1 Section 11 of the Washington Constitution, the Religious Land Use and Institutionalized Persons Act (RLUIPA), and RCW 35A.21.360(1) all authorizes religious organizations to host the homeless on their property;

WHEREAS, RCW 35A.21.360(3) provides that a code city may enter into a memorandum of understanding to protect the public health and safety of both the residents of the hosting organization and the residents of the code city, and sets a threshold of what must be contained in the memorandum of understanding;

WHEREAS, the Washington Legislature ENGROSSED SUBSTITUTE HOUSE BILL 1754 of June 11, 2020 (*Religious Organizations – Hosting Of The Homeless*) encourages local jurisdictions and religious organizations to work together collaboratively to protect the health and safety of residents and the surrounding community;

WHEREAS, Burien encourages, appreciates, and supports the safe and effective support of –the unhoused on religious organizations' property;

NOW, THEREFORE, Oasis and Burien hereto agree as follows:

1. Consistent with RCW 35A.21.360(3)(b), Oasis will
   a. protect and recognize a resident's right in an outdoor encampment to seek public health and safety assistance,
   b. protect and recognize a resident's right in an outdoor encampment to access social services on-site,
   c. protect and recognize the right of a resident in an outdoor encampment to directly interact with the host religious organization ("Oasis"), including the ability to express any concerns regarding the managing agency ("Burien Community Support Coalition") to Oasis. ~~the religious organization~~, and
   d. allow Burien Community Support Coalition to develop and enforce a written code of conduct agreed to by ~~the managing agency, Oasis, and~~ all volunteers working with outdoor encampment residents.

2. Pursuant to RCW 35A.21.360(4), Oasis will "ensure that the code city or local law enforcement agency has completed sex offender checks of all adult residents and guests."

3. ~~Pursuant to RCW 35A.21.360(5), Oasis will utilize Washington's homeless client management information system, as provided for in RCW 43.185C.180.~~

4.3. The Parties agree to work cooperatively and in good faith and to take such reasonable action(s) or precaution(s) necessary to effectuate the purpose of this agreement.

5.4. This MOU may be terminated at any time by either party on thirty (30) days written notice to other party at the contact listed below.

6.5. Any notices provided to any Party in connection with this Agreement shall be directed to the agents listed below:

City of Burien contact is:

Burien Free Methodist Church dba Oasis Home Church contact is:

_____

Pastor Mark Miller
mmiller@oasishomechurch.com

_____

**Commented [MCL1]:** This provision is required only for organizations accepting public funds which Burien Community Support Coalition is not.

**Field Code Changed**

DATED this_____day of December_____, 2023.

| CITY OF BURIEN, WASHINGTON | BURIEN FREE METHODIST CITY OF BURIEN, WASHINGTON BURIEN FREE METHODIST CHURCH dba OASIS HOME CHURCH |
|---|---|
| By:_____ | By: _____ |
| Name:_____ | Name: _____ |
| Title:_____ | Title:_____ |
| Date:_____ | Date: _____ |

# APPENDIX M

MEMORANDUM OF UNDERSTANDING
between
City of Burien and Burien Free Methodist Church dba Oasis Home Church
Regarding Hosting a Homeless Encampment on Religious Property – (RCW 35A.21.360)

This Memorandum of Understanding "MOU" is dated as of January 8, 2024 ("Effective Date") and entered by and between the City of Burien, Washington, a non-charter optional municipal code city hereinafter referred to as "Burien," and Burien Free Methodist Church dba Oasis Home Church, hereinafter referred to as "Oasis," and collectively referred to as "Parties."

WHEREAS, in a December 13, 2023, email to the City of Burien, Oasis encouraged Burien to discuss, draft, and presumably enter a memorandum of understanding with Oasis under RCW 35A.21.360 to address the outdoor encampment at its religious facility;

WHEREAS, on December 13, 2023, Burien emailed a proposed MOU for Oasis' review;

WHEREAS, on December 26, 2023, Oasis returned a revised copy of the proposed MOU;

WHEREAS, previously, Oasis stated that it intends to conduct a core expression of Oasis Home Church and its members' faith by providing a sanctuary for the unhoused, and Burien does not doubt or question Oasis' intent or faith;

WHEREAS, Burien has seen an extraordinary rapid growth in unhoused persons and appreciates Oasis's willingness to help the unhoused population;

WHEREAS, the First Amendment to the United States Constitution, Article 1 Section 11 of the Washington Constitution, the *Religious Land Use and Institutionalized Persons Act* (RLUIPA), 42 U.S.C. § 2000cc, the *Religious Freedom Restoration Act of 1993* (RFRA), 42 U.S.C. § 2000bb, and RCW 35A.21.360, *Hosting the homeless by religious organizations—When authorized—Requirements—Prohibitions on local actions* protect the rights of individuals and religious organizations to express their faith;

WHEREAS, while the First Amendment protects religious freedom, a municipality's "zoning ordinance does not prohibit the operation of a church." *Christian Methodist Episcopal Church v. Montgomery*, No. 4:04-CV-22322-RBH, 2007 U.S. Dist. LEXIS 5133, at *30 (D.S.C. Jan. 18, 2007) The District Court concluded "The Church has not shown how its rights to freely exercise religion" would be burdened in any way by conforming to municipal zoning regulations. *Ibid.*

WHEREAS, that district court added, "the plaintiffs' position that, under the RLUIPA, a church should be allowed to operate wherever it so chooses, without regard for zoning rules, is simply unreasonable and not supported by the statute or by the First Amendment. *Ibid at *31.*

Numerous courts have upheld zoning regulations as applied to churches as not creating a substantial burden on religion. *Ibid. See, e.g., The Lighthouse Institute for Evangelism, Inc. v. City of Long Branch*, 406 F. Supp. 2d 507 (D.N.J. 2005); *Williams Island Synagogue, Inc. v. City of Aventura*, 358 F.Supp.2d 1207 (S.D. Fla. 2005); *Civil Liberties for Urban Believers*, 342 F.3d at 760."

WHEREAS, while Article 1 Section 11 of the Washington Constitution provides absolute freedom of conscience to every individual in religious sentiment, belief, and worship, it does not "justify practices inconsistent with the peace and safety of the state." Wash. Const. Art. I, § 11.

WHEREAS, while RLUIPA does protect religious organizations from discrimination and institutionalized persons from having their religious exercise substantially burdened, "RLUIPA cannot stand for the proposition that ... [a religious organization] is immune from a ... zoning ordinance simply because the [religious organization] pursues a religious mission. Although RLUIPA assuredly protects religious institutions in their religious exercise, the statute's language indicates that it is not an exemption from land-use regulations. *In Living Water Church of God v. Charter Twp. Meridian*, 258 F. App'x 729, 736 (6th Cir. 2007);

WHEREAS, related to RLUIPA is RFRA, which states, "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability" unless it furthers "a compelling governmental interest and is the least restrictive means of furthering that compelling governmental interest;"

WHEREAS, RFRA, at 42 U.S.C. § 2000bb(a)(4), notes "in *Employment Division v. Smith*, 494 U.S. 872 (1990) the Supreme Court virtually eliminated the requirement that the government justify burdens on religious exercise imposed by laws neutral toward religion" when the Court wrote it has "never held that an individual's religious beliefs excuse him from compliance with an otherwise valid law prohibiting conduct that the State is free to regulate. On the contrary, the record of more than a century of our free exercise jurisprudence contradicts that proposition." The Supreme Court continued by finding that "Subsequent decisions have consistently held that the right of free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).' *United States v. Lee*, 455 U.S. 252, 263, n. 3, 102 S.Ct. 1051, 1058, n. 3, 71 L.Ed.2d 127 (1982) (STEVENS, J., concurring in judgment); see *Minersville School Dist. Bd. of Ed. v. Gobitis, supra*, 310 U.S., at 595, 60 S.Ct., at 1013 (collecting cases)." (Citations in original).

WHEREAS, "activities of individuals, even when religiously based, are often subject to regulation by the States in the exercise of their undoubted power to promote the health, safety, and general welfare, or the Federal Government in the exercise of its delegated powers." *Wis v. Yoder*, 406 U.S. 205, 220 (1972).

WHEREAS, RCW 35A.21.360(1) authorizes religious organizations to host the unhoused on their property;

WHEREAS, RCW 35A.21.360(2) contains prohibitions on the exercise of governmental authority such as (a) imposing "conditions other than those necessary to protect public health and safety and that do not substantially burden the decisions or actions of a religious organization," and (c) imposing "permit fees in excess of the actual costs associated with the review and approval of permit applications;"

WHEREAS, RCW 35A.21.360(8) provides civil immunity for "damages arising from the permitting decisions for a temporary encampment (emphasis added);

WHEREAS, RCW 35A.21.360(3) provides that a code city may agree to a memorandum of understanding to protect the public health and safety of both the residents of the hosting organization and the residents of the code city, and sets a threshold of what must be contained in the memorandum of understanding;

WHEREAS, the Washington Legislature ENGROSSED SUBSTITUTE HOUSE BILL 1754 of June 11, 2020 (*Religious Organizations – Hosting Of The Homeless*) encourages local jurisdictions and religious organizations to work together collaboratively to protect the health and safety of residents and the surrounding community;

WHEREAS, Burien encourages, appreciates, and supports the safe and effective support of the unhoused on religious organizations' property;

WHEREAS, the Parties disagree on whether Burien requiring a land use permit is a substantial burden imposed on Oasis;

WHEREAS, in exchange for the agreed-upon language below, Burien will withdraw its notice of violation issued on December 7, 2023, and will allow this MOU to satisfy Burien's land use permit requirements;

NOW, THEREFORE, Oasis and Burien hereto agree as follows:

1. Consistent with RCW 35A.21.360(3)(b), Oasis will
   a. protect and recognize a resident's right in an outdoor encampment to seek public health and safety assistance,
   b. protect and recognize a resident's right in an outdoor encampment to access social services on-site,
   c. protect and recognize the right of a resident in an outdoor encampment to directly interact with the host religious organization (Oasis), including the ability to express any concerns regarding any managing agency to Oasis, and
   d. allow a written code of conduct agreed to by the managing agency, if any, Oasis, and all volunteers working with residents of the outdoor encampment.

2. Pursuant to RCW 35A.21.360(4), Oasis will "ensure that the code city or local law enforcement agency has completed sex offender checks of all adult residents and guests."

3. The Parties agree to work cooperatively and in good faith and to take such reasonable action(s) or precaution(s) necessary to effectuate the purpose of this agreement.

4. This MOU may be terminated at any time by either party on fifteen (15) days prior written notice to the other party.

5. Any notices provided to any Party in connection with this Agreement shall be directed to the agents listed below:

City of Burien contact is:

Burien Free Methodist Church dba Oasis Home Church contact is:

Pastor Mark Miller
MMiller@OasisHomeChurch.com

DATED this _____ day of _____, 2024.

CITY OF BURIEN, WASHINGTON

BURIEN FREE METHODIST CHURCH
dba OASIS HOME CHURCH

By: _____

By:

Name: _____

Name:

Title:_____

Title:

Date: _____

Date:

# APPENDIX N

| | |
|---|---|
| **From:** | Nathan Hawthorne <nathanh@burienwa.gov> |
| **Sent:** | Wednesday, January 24, 2024 4:33 PM |
| **To:** | James E. Lobsenz |
| **Cc:** | Debbie Groth; Ndiabou Diagana; mmiller@oasishomechurch.com |
| **Subject:** | Oasis Home Church MOU Reply Letter |
| **Attachments:** | 2024-01-24 - Burien Reply Letter - Oasis - Signed.pdf |

Mr. Lobsenz,

Please see the attached letter with a revised MOU for you and your client to review.

Best,
Nate

**Nathan Hawthorne**
Paralegal

## City of Burien
(206) 439-3165 office
nathanh@burienwa.gov
**Burienwa.gov**

NOTICE OF PUBLIC DISCLOSURE: This e-mail account is public domain. Any correspondence from or to this e-mail account may be a public record. Accordingly, this e-mail, in whole or in part, may be subject to disclosure pursuant to RCW 42.56, regardless of any claim of confidentiality or privilege asserted by an external party.

1

# APPENDIX O



**Burien**

City of Burien
400 SW 152nd Street
Suite 300
Burien, WA 98166-1911

P 206.241.4647
F 206.248.5539

burienwa.gov

January 24, 2024

***Via First Class Mail and
Email to lobsenz@carneylaw.com***

Mr. James E. Lobsenz, Esq.
Carney Badley Spellman, P.S.
701 5th Avenue, Suite 3600
Seattle, Washington 98104

Mr. Lobsenz,

Burien acknowledges receipt of your letter dated January 22, 2024, in which the Church rejects Burien's proposed Memorandum of Understanding (MOU) because Burien did not state the purpose of the MOU, the MOU did not state the Notice of Violation dismissal would be with prejudice, and it was not clear that the accrued fines would be waived.

While it does not appear that we will reach an agreement on whether a church is required to comply with land use permitting laws, Burien remains willing to resolve this matter with an MOU.

Thus, Burien agrees to withdraw the Notice of Civil Violation dated November 16th 2023, including all fines and fees accrued, **with prejudice**. In addition, Burien will not seek a judgment or enforce a judgment related to that Notice of Civil Violation. In exchange, your client signs the enclosed MOU.

The MOU notes that it is an alternative to the permitting process, that the notice is dismissed with prejudice, and the fines are waived; while each party retains the right to terminate this MOU agreement with 30 days written notice as (Oasis proposed a 30-day termination clause).

We hope we can bring this matter to a close.

Sincerely,

Ndiabou Dlagana
Assistant City Attorney

Cc: Pastor Mark Miller at mmiller@oasishomechurch.com

# APPENDIX P

MEMORANDUM OF UNDERSTANDING
between
City of Burien and Burien Free Methodist Church dba Oasis Home Church
Regarding Hosting a Homeless Encampment on Religious Property – (RCW 35A.21.360)

This Memorandum of Understanding "MOU" is dated as of January 24, 2024 ("Effective Date") and entered by and between the City of Burien, Washington, a non-charter optional municipal code city hereinafter referred to as "Burien," and Burien Free Methodist Church dba Oasis Home Church, hereinafter referred to as "Oasis," and collectively referred to as "Parties."

WHEREAS, the Parties disagree on whether a church must comply with land use regulations such as obtaining a temporary use permit;

WHEREAS, in exchange for the agreed-upon language below, the parties agree this MOU will serve as an alternative to Burien's permitting process as requested by Pastor Miller;

WHEREAS, in exchange for Oasis signing this MOU, Burien agrees to withdraw its Notice of Civil Violation issued on December 7, 2023, including all accrued fines and fees, **with prejudice,** and not seek a judgment or enforce a judgment related to the Notice of Civil Violation; and

NOW, THEREFORE, Oasis and Burien hereto agree as follows:

1. Consistent with RCW 35A.21.360(3)(b), Oasis will
   a. protect and recognize a resident's right in an outdoor encampment to seek public health and safety assistance,
   b. protect and recognize a resident's right in an outdoor encampment to access social services on-site,
   c. protect and recognize the right of a resident in an outdoor encampment to directly interact with the host religious organization (Oasis), including the ability to express any concerns regarding any managing agency to Oasis, and
   d. allow a written code of conduct agreed to by the managing agency, if any, Oasis, and all volunteers working with residents of the outdoor encampment.

2. Pursuant to RCW 35A.21.360(4), Oasis will "ensure that the code city or local law enforcement agency has completed sex offender checks of all adult residents and guests."

3. The Parties agree to work cooperatively and in good faith and to take such reasonable action(s) or precaution(s) necessary to effectuate the purpose of this agreement.

4. This MOU may be terminated at any time by either party on thirty (30) days prior written notice to the other party.

5. Any notices provided to any Party in connection with this Agreement shall be directed to the agents listed below:

City of Burien contact:

Burien Free Methodist Church dba Oasis Home Church contact is:

Community Development Director
JeffreyW@BurienWA.gov

Pastor Mark Miller
WMMiller@OasisHomeChurch.com

CITY OF BURIEN, WASHINGTON

BURIEN FREE METHODIST CHURCH
dba OASIS HOME CHURCH

By: _____

By: _____

Name: _____

Name: _____

Title: _____

Title: _____

Date: _____

Date: _____

# APPENDIX Q

MEMORANDUM OF UNDERSTANDING
Oasis Home Church between Burien Free Methodist Church

City of Burien and ~~Burien Free Methodist Church~~ dba ~~Oasis Home Church~~

Regarding Hosting a Homeless Encampment on Religious Property – (RCW 35A.21.360)

This Memorandum of Understanding "MOU" is dated as of January 24, 2024 ("Effective Date") and entered by and between the City of Burien, Washington, a non-charter optional municipal code city hereinafter referred to as "Burien," and ~~Burien Free Methodist Church~~ dba ~~Oasis Home Church~~, hereinafter referred to as "Oasis," and collectively referred to as "Parties."

Burien Free Methodist Church                                    Oasis Home Church

WHEREAS, the Parties disagree on whether a church must comply with land use regulations such as obtaining a temporary use permit;

WHEREAS, in exchange for the agreed-upon language below, the parties agree this MOU will serve as an alternative to Burien's permitting process as requested by Pastor Miller;

WHEREAS, in exchange for Oasis signing this MOU, Burien agrees to withdraw its Notice of Civil Violation issued on December 7, 2023, including all accrued fines and fees, with prejudice, and not seek a judgment or enforce a judgment related to the Notice of Civil Violation; and

NOW, THEREFORE, Oasis and Burien hereto agree as follows:

1. Consistent with RCW 35A.21.360(3)(b), Oasis will
   a. protect and recognize a resident's right in an outdoor encampment to seek public health and safety assistance,
   b. protect and recognize a resident's right in an outdoor encampment to access social services on-site,
   c. protect and recognize the right of a resident in an outdoor encampment to directly interact with the host religious organization (Oasis), including the ability to express any concerns regarding any managing agency to Oasis, and
   d. allow a written code of conduct agreed to by the managing agency, if any, Oasis, and all volunteers working with residents of the outdoor encampment.

2. Pursuant to RCW 35A.21.360(4), Oasis will "ensure that the code city or local law enforcement agency has completed sex offender checks of all adult residents and guests."

3. The Parties agree to work cooperatively and in good faith and to take such reasonable action(s) or precaution(s) necessary to effectuate the purpose of this agreement.

4. This MOU may be terminated at any time by either party on thirty (30) days prior written notice to the other party.

5.  Any notices provided to any Party in connection with this Agreement shall be directed to the agents listed below:

City of Burien contact:

~~Burien Free Methodist Church dba Oasis Home Church~~ contact is: *Oasis Home Church* / *Burien Free Methidist Church*

Community Development Director
JeffreyW@BurienWA.gov

Pastor Mark Miller
~~WMMiller~~@OasisHomeChurch.com *mmiller*

CITY OF BURIEN, WASHINGTON

By: _____

Name: _____

Title: _____

Date: _____

*Oasis Home church*

~~BURIEN FREE METHODIST CHURCH~~
dba ~~OASIS HOME CHURCH~~ *Burien Free Methidist church*

By: _____

Name: *Mark Miller*

Title: *Pastor*

Date: *01/26/24*

# APPENDIX R

**From:** James E. Lobsenz <Lobsenz@carneylaw.com>
**Sent:** Friday, January 26, 2024 3:13 PM
**To:** Nathan Hawthorne <nathanh@burienwa.gov>
**Subject:** RE: Oasis Home Church -- Approved MOU with Pastor Miller's signature

Dear Mr. Hawthorne:

Attached is the latest MOU which you sent to me on Wednesday. Pastor Miller has signed it. He made some corrections because Burien had the d/b/a designation backwards. Burien had Burien Free Methodist Church doing business as Oasis Church. But actually, it's Oasis Church that is doing business as the Burien Free Methodist Church. Burien also had Pastor Miller's email address slightly wrong and he corrected that as well. Its MMiller@OasisHomeChurch.com not WMMiller@OasisHomeChurch.com.

Please have the MOU signed by a Burien City official with authority to sign for the City. I assume that would be either the Mayor or the City Manager. After the City's agent has signed it, please send me back a copy bearing that signature and a notice of withdrawal with prejudice of the notice of violation issued on December 7, 2023. It is fine to send it to me those documents as attachments to an email. I assume the MOU will take effect as soon as the City signs it.

Thank you for your assistance.

James E. Lobsenz
Carney Badley Spellman, P.S.
701 Fifth Avenue, Suite 3600
Seattle, WA 98104
tel (206) 622-8020
fax (206) 467-8215

1

# APPENDIX S

**From:** Nathan Hawthorne <nathanh@burienwa.gov>
**Sent:** Friday, January 26, 2024 3:39 PM
**To:** James E. Lobsenz <Lobsenz@carneylaw.com>
**Subject:** RE: Oasis Home Church -- Approved MOU with Pastor Miller's signature

Mr. Lobsenz,

Email received. I have passed your message and the document along to the City Attorney and City Manager.

Best,
Nate

**Nathan Hawthorne**
Paralegal

## City of Burien
(206) 439-3165 office
nathanh@burienwa.gov
**Burienwa.gov**

NOTICE OF PUBLIC DISCLOSURE: This e-mail account is public domain. Any correspondence from or to this e-mail account may be a public record. Accordingly, this e-mail, in whole or in part, may be subject to disclosure pursuant to RCW 42.56, regardless of any claim of confidentiality or privilege asserted by an external party.

1

# APPENDIX T

**From:** James E. Lobsenz <Lobsenz@carneylaw.com>
**Sent:** Tuesday, February 6, 2024 2:39 PM
**To:** Nathan Hawthorne <nathanh@burienwa.gov>
**Cc:** Ndiabou Diagana <ndiaboud@burienwa.gov>
**Subject:** No response to January 26 letter

CAUTION: This email originated from **outside** of the City of Burien. Do not click links or open attachments unless you recognize the sender and have verified the contents are safe.

Dear Mr. Hawthorne and Ms. Diagana:

I have not received anything, or heard from you, since I sent you the MOU on January 26. Can I expect to hear from you soon?

Jim Lobsenz

James E. Lobsenz
Carney Badley Spellman, P.S.
701 Fifth Avenue, Suite 3600
Seattle, WA 98104
tel (206) 622-8020
fax (206) 467-8215

2

# APPENDIX U

**From:** Nathan Hawthorne <nathanh@burienwa.gov>
**Sent:** Monday, February 12, 2024 1:39 PM
**To:** James E. Lobsenz <Lobsenz@carneylaw.com>
**Cc:** Ndiabou Diagana <ndiaboud@burienwa.gov>
**Subject:** RE: No response to January 26 letter

Mr. Lobsenz,

With the recent news that Oasis is no longer hosting the encampment, there is no longer a need for MOU.

Best,
Nate

Nathan Hawthorne
Paralegal

City of Burien
(206) 439-3165 office
nathanh@burienwa.gov
**Burienwa.gov**

NOTICE OF PUBLIC DISCLOSURE: This e-mail account is public domain. Any correspondence from or to this e-mail account may be a public record. Accordingly, this e-mail, in whole or in part, may be subject to disclosure pursuant to RCW 42.56, regardless of any claim of confidentiality or privilege asserted by an external party.

1