**THE HONORABLE BARBARA J. ROTHSTEIN**

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| PASTOR MARK MILLER, and the BURIEN FREE METHODIST CHURCH, also known as the OASIS HOME CHURCH, | CASE NO. 2:24-cv-1301-BJR |
| Plaintiffs, | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| CITY OF BURIEN, a municipal corporation; JEFFREY D. WATSON, Planning Representation for the City of Burien; and JOSEPH STAPLETON, Building Representation for the City of Burien | |
| Defendants. | |

## I.    INTRODUCTION

Plaintiffs Pastor Mark Miller and the Burien Free Methodist Church, also known as Oasis Home Church (collectively, "the Church") bring this action for declaratory relief against Defendants the City of Burien, Jeffrey D. Watson, and Joseph Stapleton (collectively, "Burien" or "the City"). Currently before the Court is the City's motion to dismiss pursuant to Federal Rule 12(b)(6). Dkt. No. 14, Defendant's Rule 12(b)(6) Motion to Dismiss ("Mot."). The Church opposes the motion. Dkt. No. 17, Plaintiffs' Opposition

to Defendants' Motion to Dismiss ("Opp. to Mot."). Having reviewed the motion, opposition, and reply thereto, the record of the case, and the relevant legal authority, the Court will grant the City's motion to dismiss. The reasoning for the Court's decision follows.

## II.    FACTUAL BACKGROUND

Mark Miller is the pastor at the Burien Free Methodist Church located at 520 S. 150th Street in Burien, Washington. The Church is in an area of Burien that is zoned for multi-family use and is designated a religious facility. Burien is a municipality and political subdivision of the State of Washington and is governed, in part, by the Burien Municipal Code ("BMC" or "Burien's code" or "the Code").

Burien's code contains zoning ordinances that prescribe certain allowable land uses based on location or zone to "promote the general public health, safety, comfort and welfare of the residents of the city of Burien." BMC 19.05.030(2). Relevant to this lawsuit, the Code specifically designates the following land uses in a multi-family zone: townhomes, apartments, family day care homes, day care centers, mixed use buildings, public park and recreation facilities, community residential facilities, nursing homes, religious facilities, schools, assisted living facilities, essential public facilities, government facilities, public utilities, personal wireless services facilities, community gardens, and enhanced services facilities. BMC 19.15.010.1. The Code further provides that if a landowner in a multi-family zone wants to use their land for a purpose not otherwise designated by BMC 19.15.010.1, the landowner must obtain a temporary use permit pursuant to BMC 19.75.010. BMC 19.75.010, in turn, provides that an application for a temporary use permit "shall be granted" if the applicant demonstrates that the proposed

temporary use "will not be materially detrimental to the public welfare" and "is compatible with existing land use in the immediate vicinity in terms of noise and hours of operation" and that [a]dequate public off-street parking and traffic control … can be provided in a safe manner". BMC 19.75.090(1)-(3).

In November 2023, the Church expressed interest in hosting an encampment for 100 unhoused individuals in its parking lot for a period of three months. The City asserts that because a homeless encampment is not a specifically designated land use for a multi-family zone under BMC 19.15.010.1, the Church was required to apply for a temporary use permit under BMC 19.75.010. As such, the City requested that the Church complete an application before hosting the encampment. The City claims that it repeatedly informed the Church that it supported the Church's desire to host the encampment, waived the permit application fee, and at no time indicated that it would deny the temporary permit application.

Despite the City's repeated requests and assurances, the Church refused to submit an application, claiming that being forced to do so violates its state and federal constitutional rights. On November 7, 2023, the Church started hosting the encampment without a permit. On December 7, 2023, the City issued a Notice of Violation ("NOV") to the Church, which is an enforcement tool prescribed by the BMC. The NOV imposed a monetary penalty of $125 and notified the Church that the fee would increase each day that the Church continued to operate the encampment without a permit. However, the City proposed drafting a Memorandum of Understanding ("MOU") for the encampment (which would have also rescinded the fines imposed by the NOV). The Church and the City exchanged several drafts of the MOU, but the issue eventually became moot when, on

February 5, 2024, the Church ended the encampment as it had planned to do. Thereafter, the City rescinded the fines that had accrued from the Church's failure to respond to the NOV. *Id.* at ¶ 76.

The Church claims that it intends to host the homeless encampment again in the future and fears being subject to further enforcement action by the City. Therefore, it filed this lawsuit seeking a declaratory judgment that the City is barred from requiring the Church to apply for and obtain a temporary use permit before hosting the encampment on its property because doing so violates the Church's state and federal constitutional rights, as well as its statutory rights under Religious Land Use and Institutionalized Persons Act ("RLUIPA") and RCW 35A.21.360. Amend Comp. at Relief Request ¶ 1.

## III.    STANDARD OF REVIEW

A motion to dismiss for failure to state a claim under Federal Rule 12(b)(6) is properly granted if the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016). When considering a motion to dismiss under Federal Rule 12(b)(6), courts must accept the factual allegations in the complaint as true and construe such allegations in the light most favorable to the plaintiff. *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886-87 (9th Cir. 2018) quoting *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800

(9th Cir. 2017).

## IV.   DISCUSSION

The Church seeks a declaratory judgment that the City is barred from requiring it to apply for and obtain a temporary use permit before hosting a homeless encampment on its property, claiming that such a requirement violates the Church's state and federal constitutional rights, as well as its state and federal statutory rights. Specifically, The Church brings the following claims: (1) deprivation of its right to the free exercise of religion under the First and Fourteenth Amendments; (2) violation of its due process rights under the First and Fourteenth Amendments; (3) violation of its rights under RLUIPA; (4) deprivation of its right to freedom from prior restraint under Article 1 of the Washington constitution; (5) deprivation of its right to free exercise of religion under Article 1 of the Washington constitution; (6) violation of its rights under Article 11 of the Washington constitution to be free from local ordinances that conflict with state statutes; and (7) violation of its statutory rights under RCW 35.21.360.[1]

The City moves to dismiss each of these claims pursuant to Federal Rule 12(b)(6). In its opposition to the motion to dismiss, the Church only presents arguments as to the RLUIPA claim, as well as the First Amendment Free Speech and Free Exercise Clauses claims; it does not dispute the City's argument that the remaining claims must be dismissed as a matter of law. Accordingly, the Church has waived those claims, and they

---

[1]In its opposition to the City's motion, the Church appears to attempt to assert an adverse land use claim, arguing that the City incorrectly interpreted Burien's Code as it applied to the Church. The Church did not assert such a claim in its amended complaint. Even if it had, the claim would be barred by Washington's Land Use Petition Act, which is the exclusive means for securing relief from adverse land use decisions under Washington law. RCW 36.70C.10.

will be dismissed. *See Pers. Elec. Transports, Inc. v. Off. of U.S. Tr.*, 313 Fed. Appx. 51, 52 (9th Cir. 2009) (holding that the "district court correctly opined" that the party waived its argument "for failing to raise it in their opposition to the [counterparty's] motion to dismiss"); *Conservation Force v. Salazar*, 677 F. Supp. 2d 1203, 1211 (N.D. Cal. 2009), *aff'd*, 646 F.3d 1240 (9th Cir. 2011) ("Where plaintiffs fail to provide a defense for a claim in opposition, the claim is deemed waived."); *Moore v. Effectual, Inc*., 2024 WL 1091689, *10 (W.D. Wash. March 13, 2024) ("The failure to substantively oppose arguments can be construed as a waiver or abandonment of those issues thus warranting dismissal of those claims.").

### A.    Article III Standing

As an initial matter, the City argues that this Court does not have jurisdiction to address the Church's claims because the Church does not have Article III standing. Article III standing is a "bedrock constitutional requirement" that confines the jurisdiction of federal courts to "Cases" and "Controversies". *United States v. Texas*, 599 U.S. 670, 675 (2023). "For a plaintiff to get in the federal courthouse door and obtain a judicial determination of what the governing law is, the plaintiff … must have a 'personal stake' in the dispute." *Food and Drug Administration v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 379 (2024) quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). The question of constitutional standing "is not subject to waiver" so this Court must first determine whether the Church has standing before proceeding to the merits of the claims. *United States v. Hays*, 515 U.S. 737, 742 (1995).

To establish standing, the Church must demonstrate (i) that it has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the

City, and (iii) that the injury likely would be redressed by the requested judicial relief. *See Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009). Here, the parties agree that the question of standing turns on whether the Church has alleged an injury in fact. The Church claims that it has because it "intends to conduct additional hosted encampments for the homeless people of Burien" in the future and when it does, "it has every reason to expect that the City will again impose, or threaten to impose, fines against [it]." Amended Comp. at ¶¶ 98, 102. The City counters that the Church's claim that it may host another encampment in the future is a hypothetical allegation that is simply too speculative to satisfy the injury in fact requirement under Article III.

The City is correct that the alleged injury in fact for Article III purposes must be "'concrete,' meaning that it must be real and not abstract." *Alliance*, 602 U.S. at 381 quoting *TransUnion*, 594 U.S. at 424. However, the Supreme Court has clarified that a plaintiff "does not have to await the consummation of threatened injury to obtain preventive relief." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). Rather, it is "sufficient for standing purposes that the plaintiff intends to engage in 'a course of conduct arguably affected with a constitutional interest' and that there is a credible threat that the challenged provision will be invoked against the plaintiff." *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1154–55 (9th Cir. 2000) quoting *Babbitt,* 442 U.S. at 298. Thus, when a plaintiff seeks to establish standing to challenge a law or regulation that is not presently being enforced against him, he must simply demonstrate "that there is a credible threat that the challenged provision will be invoked against the plaintiff." *Id.* quoting *Babbitt*, 442 U.S. at 298; *see also Blanchette v. Connecticut General Ins*

1    *Corporation*, 419 U.S. 102, 143 (1974) (a plaintiff "does not have to await the

2    consummation of threatened injury to obtain preventive relief").

3        Here, the Church has hosted an encampment in the past and stated its intent to do

4    so again in the future without applying for a temporary use permit. When the Church

5    hosted the camp without a permit in the past, the City issued a NOV and imposed a

6    monetary penalty that ultimately accumulated to over $100,000 before the City eventually

7    waived the fee. The City continues to assert that the Church must apply for a temporary

8    use permit before hosting an encampment on its property. Accordingly, the Church has

9    every reason to believe that it will be fined again if it hosts another camp without first

10   obtaining a temporary use permit. Thus, the Court concludes that the Church has

11   sufficiently alleged "a credible threat that the challenged provision will be invoked against

12   [it]" and therefore has standing to bring its claims. *See LSO*, 205 F.3d at 1155 (stating that

13   "past instances of enforcement" and the "Government's failure to disavow application of

14   the challenged provision" are "important" factors to consider in a standing inquiry).

15   Having determined that the Church has standing, the Court will turn to the merits of the

16   claims.

17       **B.    The RLUIPA Claim**

18       As stated above, the City asserts that hosting a homeless encampment is not a

19   designated use in multi-family residential zones under the Burien code. Nevertheless, the

20   City "under[stood], support[ed], and welcome[d]" the Church's desire to host an

21   encampment on its property. Dkt. No. 11, Amended Complaint for Declarator Relief

22   ("Amend. Comp.") at Ex. B. Burien's code allows for unpermitted zoning uses but requires

23   that the property owner wishing to conduct the unpermitted use to first apply for a

8

temporary use permit. Thus, the City informed the Church that it must submit an

application for a temporary use permit prior to hosting the encampment. The City alleges

that the permitting process allows it "to safeguard the public health and safety, as well as

the health and safety of the individuals living in the encampment, through things like

inspections of the electrical systems powering the camp; ensuring ingress/egress exists for

emergency vehicles; and confirming adequate sanitation facilities (running

water/restrooms, etc.)." Mot. at 2-3. The City further claims that it waived the application

fee and repeatedly requested that the Church complete the application. The Church refused

to submit the requested application, claiming that even just the requirement to submit a

permit application constituted an infringement on its religious exercise in violation of

RLUIPA.

Congress passed RLUIPA to protect the "free exercise of religion from government

regulations." *Milosavlejevic v. City of Brier*, 2017 WL 3917015, *3 (W.D. Wash. Sept. 7,

2017) quoting *Anselmo v. County of Shasta, Cal*., 878 F. Supp. 2d 1247, 1254 (E.D. Cal.

2012). RLUIPA "requires land-use regulations that substantially burden religious exercise

to be the least restrictive means of advancing a compelling government interest." *Civil

Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 760 (7th Cir. 2003) citing

42 U.S.C. § 2000cc(a). Thus, to succeed on a RLUIPA claim, "a plaintiff must first

demonstrate that the regulation at issue actually imposes a substantial burden on religious

exercise." *Id.*; *see also Int'l Church of the Foursquare Gospel v. City of San Leandro*, 673

F.3d 1059, 1066 (9th Cir. 2011) ("[P]laintiff must demonstrate that a government action

has imposed a substantial burden on plaintiff's religious exercise."). RLUIPA does not

define what constitutes a "substantial burden" but the Ninth Circuit has concluded that

within the context of the statute, "substantial burden" means that the government is

prohibited "from imposing or implementing a land use regulation in a manner that imposes

a significantly great restriction or onus on any exercise of religion … unless the

government can demonstrate that imposition of the burden … is: (1) in furtherance of a

compelling governmental interest, and (2) the least restrictive means of furthering that

compelling governmental interest." *San Jose Christian College v. City of Morgan Hill*, 360

F.3d 1024, 1034-35 (9th Cir. 2004) (internal quotation marks omitted).

The parties concede that caring for unhoused individuals is an "exercise of

religion" for purposes of RLUIPA. However, the parties dispute whether requiring the

Church to apply for a temporary use permit before it is allowed to host a homeless

encampment constitutes "imposing a 'substantial burden' on religious exercise" under the

statute. It is important to note that this is not a denial of application case; rather, the

question here is whether the City can require the Church to submit a permit application.

This Court finds the Ninth Circuit's decision in *San Jose Christian College* instructive on

this issue.

In *San Jose Christian College*, a religious institution sought to change its

previously approved property use from a hospital to an educational facility. 360 F.3d at

1027. Because the original development plan for the land was designated solely for

hospital use, the institution filed an application with the city seeking to amend the

allowable property use to educational facilities. The city reviewed the application,

determined it was incomplete, and outlined additional information that the institution

needed to provide in order "to make the application complete." *Id.* at 1028. Rather than

submitting the requested additional material, the institution decided to submit a "scaled

back" version of its first application. *Id*. Ultimately the city "denied [the institution's] re-zoning application due to [the institution's] failure to comply with the [c]ity's application requirements." *Id*. at 1129.

The institution sought injunctive relief in federal court, alleging among other claims, that the city's zoning ordinance violated RLUIPA because it prohibited the institution from using its property "to carry on its mission[s] of Christian education and transmitting its religious beliefs." *Id*. at 1035 (alternation in original). The Ninth Circuit rejected the institution's argument, stating that the institution's real objection was to having to comply with the city's ordinance application requirements:

> The City's ordinance imposes no restriction whatsoever on [the institution's] religious exercise; it merely requires [the institution] to submit a *complete* application, as is required of all applicants. Should [the institution] comply with this request, it is not at all apparent that its re-zoning application will be denied.

*Id*. at 1035 (italics in original). The Ninth Circuit concluded that "'the costs, procedural requirements, and inherent political aspects' of the permit approval process were 'incidental to any high-density urban land use' and thus '[did] not amount to a substantial burden on religious exercise.'" *Id*. quoting *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003) (alternation in original). This, of course, is consistent with the case at hand where the Church was required to complete a temporary use permit application just like any secular organization would be if it wanted to host a homeless encampment on property located in multi-family zoning. Thus, the Court concludes that simply requiring the Church to submit an application does not constitute a substantial burden on the Church's religious exercise for purposes of RLUIPA. *Id*. at 1035.

This decision is consistent with decisions from other circuits that hold that requiring a church to comply with land-use regulations, in of itself, does not run afoul of RLUIPA. *See e.g. Living Water Church of God v. Charter Twp. of Meridian*, 258 Fed. Appx. 729, 736-37 (6th Cir. 2007) (RLUIPA does not stand for the proposition that a religious institution is immune from zoning laws simply because it is pursuing a religious mission); *Westchester Day Sch. v. Vill. of Mamaroneck*, 417 F. Supp. 2d 477, 544 (S.D.N.Y. 2006), *aff'd*, 504 F.3d 338 (2d Cir. 2007) ("[C]ourts must ensure that the facts warrant protection under RLUIPA, rather than simply granting blanket immunity from zoning laws."); *Civil Liberties for Urban Believers*, 342 F.3d at 762 ("[N]o such free pass for religious land uses masquerades among the legitimate protections RLUIPA affords to religious exercise."); *Vision Church v. Village of Long Grove*, 468 F.3d 975, 991 (7th Cir. 2006) (requiring a special use permit did not violate RLUIPA). Likewise, the Washington Supreme Court has held that the mere requirement of applying for a land-use permit does not unconstitutionally burden a church's religious freedoms. *See Open Door Baptist Church v. Clark County*, 140 Wash.2d 143, 160 (2000) (requiring a church to apply for a permit and "the inconvenience of filling out paperwork" that came with it was not an impermissible burden on church's free exercise of religion); *City of Woodinville v. Northshore United Church of Christ*, 166 Wash.2d 633, 643 (2009) ("[T]he burden of properly applying for a permit was not an excessive burden on religion" the burden of applying for a permit is "a slight inconvenience" that does not "impose [a] substantial burden on the exercise of religion").

Of course, the result could be different if the Church *had* applied for the permit and the City *denied* the application. It is possible that the circumstances surrounding a

particular permit application could result in a RLUIPA violation. *See e.g. Harbor Missionary Church Corp. v. City of San Buenaventura*, 642 Fed. Appx. 726, 729 (9th Cir. 2016) (holding that city's denial of church's conditional use permit application constituted a substantial burden on the church's religious exercise because it required the church to sell its current property and relocate if it wanted to continue conducting its homeless ministry); *City of Woodinville*, 166 Wash.2d at 644-45 (city's total moratorium on land use permit applications pending completion of a study on sustainable development placed a substantial burden on the church's exercise of its religious exercise.) However, that is not the situation here. Here, the Church did *not* apply for a permit, the City did *not* deny the permit application, and the City did *not* deny the Church's the right to host a homeless encampment—indeed, the City supported the Church's endeavor. However, the City did require that the Church fill out a simple two-page application so that the City could ensure that the health and safety of the neighborhood residents, as well as the encampment occupants, was accounted for. Such minimum inconvenience does not constitute a substantial burden on the Church for purposes of RLUIPA. Because substantial burden is a threshold requirement under the statute, the Church's failure to plausibly allege such a burden means that its RLUIPA claim fails as a matter of law and must be dismissed. *See Civil Liberties for Urban Believers*, 342 F.3d at 762 (holding that RLUIPA was inapplicable because plaintiffs failed to show that the challenged regulation imposed a substantial burden on religious exercise).

C.    **The First Amendment Claims**

The Church also alleges that the City's permit requirement violates its free speech and free exercise rights under the First Amendment. The Free Speech and Free Exercise

Clauses "work in tandem…the Free Exercise Clause protects religious exercises, whether communicative or not [and] the Free Speech Clause provides overlapping protection for expressive religious activities." *Kennedy v. Bremerton School District*, 597 U.S. 507, 523 (2022). The Free Speech and Free Exercise Clauses are made applicable to state and local governments by the Fourteenth Amendment. *Id.* at 524. It is the Church's burden to demonstrate an infringement of its rights under these Clauses. If the Church carries its burden, the focus then shifts to the City to show that its actions "were nonetheless justified and tailored consistent with the demands of our case law." *Id.*

> 1.      **The Free Speech Clause Claim**

The Church argues that the City's permitting requirement constitutes an unconstitutional prior restraint on its First Amendment free speech rights. It asserts a facial challenge, meaning that the Church is challenging the regulation as written. *Spirit of Aloha Temple v. County of Maui*, 49 F.4th 1180, 1188 (9th Cir. 2022). In general, courts disfavor facial challenges, and whether a "facial prior restraint challenge[] may proceed depends on the law being challenged." *Id.* citing *Epona v. County of Ventura*, 876 F.3d 1214, 1220 (9th Cir. 2017). Facial challenges are "allowed against laws aimed at expressive conduct but disallowed against laws of general application not aimed at conduct commonly associated with expression." *Spirit of Aloha*, 49 F.4th at 1188 citing *S. Or. Barter Fair v. Jackson County*, 372 F.3d 1128, 1135 (9th Cir. 2004). "In other words, a facial challenge is proper only if the statute by its terms seeks to regulate spoken words or patently expressive or communicative conduct, such as picketing or handbilling, or if the statute significantly restricts opportunities for expression." *Id.* quoting *S. Or. Barter Fair*, 372 F.3d at 1135.

14

Thus, permitting regulations are subject to facial challenges only if they have "a close enough nexus to expression, or to conduct commonly associated with expression, to pose a real and substantial threat" that protected speech or conduct will be suppressed. *City of Lakewood v. Plain Dealer Publ'g Co*., 486 U.S. 750, 759 (1988). "[F]acial challenges to a law 'with no close connection to expression'" are "not permit[ted]." *Spirit of Aloha*, 49 F.4th at 1188 quoting *Gaudiya Vaishnava Soc'y v. City & County of San Francisco*, 952 F.2d 1059, 1062-63 (9th Cir. 2012). Therefore, in determining whether a plaintiff can maintain a prior restraint facial challenge, the court must first ask where the challenged law falls "along the spectrum from activity that is clearly protected by the First Amendment to activity with some expressive purpose to activity with no expressive purpose." *Id*. quoting *S. Or. Barter Fair*, 372 F.3d at 1135.

The Church argues that because Burien's code requires it to obtain a temporary use permit before hosting a homeless encampment, and because serving the unhoused population is a religious activity, the code is impacting its religious expression. The Church further argues that because the Code (1) lacks "narrow, objective, and definite standards" for issuing temporary use permits thereby giving the permitting authority unbridled discretion, and (2) "contains no time periods meaning that the permitting authority could delay issuing a decision indefinitely", it constitutes an unlawful prior restraint on its free speech rights. The City counters that the Church cannot maintain a facial challenge to Burien's code because the Code does not target speech nor expression—and thus does not implicate the Free Speech Clause of the First Amendment.

The Church relies heavily on the Ninth Circuit's recent decision in *Spirit of Aloha* to support its free speech claim. In *Spirit of Aloha*, the Ninth Circuit reviewed a zoning

regulation that related to property designated as agricultural land. For such properties that are smaller than fifteen acres, the regulation listed uses that were either allowed or that required a special use permit, which was issued at the discretion of the county planning commission. *Spirit of Aloha*, 49 F.4th at 1187. The zoning regulation specifically stated that churches and religious institutions required special use permits to operate on such land. The plaintiff, a nonprofit spiritual service organization, brought a prior restraint facial challenge to the regulation when its application for a special use permit was denied. The Ninth Circuit concluded that the plaintiff could bring a facial challenge to the regulation because "even though the permitting scheme was more broadly about agriculturally zoned land" it "expressly requires a special use permit for religious activity, which is commonly associated with expression" and although "the permitting scheme does not regulate the specificities of religious conduct, its regulation of where religious congregants may gather makes it 'broad enough' to provide a sufficient nexus to expression." *Id.* at 1190 quoting *S. Or. Barter Fair*, 372 F.3d at 1135. The Ninth Circuit clarified that because the permitting scheme targeted "expressive conduct in the form of churches and religious institutions," the scheme moved "from the 'no expressive conduct' portion of the spectrum to the 'some expressive purpose' portion." *Id.*

The problem with the Church's reliance on *Spirit of Aloha* is that the regulations in that case specifically targeted religious institutions, while the regulation in this case does not. Burien's code prohibits *any* entity—secular or religious—from hosting a homeless encampment in a multi-family zone without first obtaining a temporary use permit. The mere fact that a regulation impacts a religious institution does not render it unconstitutional. *See e.g. Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508

16

U.S. 520, 531 (1993) ("[A] law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice."); *San Jose Christian College*, 360 F.3d at 1032-33 (denial of religious school's rezoning application did not violate the school's free speech rights because the zoning ordinance was generally applicable and served a purpose unrelated to the content of expression). Moreover, there is nothing in the challenged portions of Burien's code that targets expressive conduct. As the Ninth Circuit stated in *Spirit of Aloha*, "laws of general application that are not aimed at conduct commonly associated with expression" are not subject to facial challenges. *Id.* at 1189; *see also C.L.U.B. v. City of Chicago*, 157 F. Supp. 2d 903, 915-916 (N.D. Ill. 2001) (denying a free speech challenge to a zoning ordinance because the objective of the ordinance was harmonious land use not expression and just because the ordinance impacted a church does not mean it impacted "religious speech"; "the operation of a house of worship does not equate to 'religious speech,' any more than the operation of a shoe store equates with commercial speech"). Therefore, the Church has failed to plausibly allege that the challenged regulation impacts speech. As such, its prior restraint facial challenge fails as a matter of law and must be dismissed. *See Spirit of Aloha*, 49 F.4th at 1188 quoting *Gaudiya Vaishnava Soc'y*, 952 F.2d 1062-63 ("We do not permit facial challenges to a law 'with no close connection to expression [even if it] provides an official with discretion that might be used to reward or punish speech.'").

### 2. The Free Exercise Clause Claim

The Church also claims that Burien's code violates its right to the free exercise of religion. "The Free Exercise Clause of the First Amendment, which has been made

17

applicable to the States by incorporation into the Fourteenth Amendment, provides that 'Congress shall make no law respecting an establishment of religion, or *prohibiting the free exercise thereof ….*'" *San Jose Christian College*, 360 F.3d at 1030 quoting *Employment Div., Oregon Dep't of Human Resources v. Smith*, 494 U.S. 872, 876-77 (1990)) (emphasis in *Smith*). "While the First Amendment provides absolute protection to religious thoughts and beliefs, the free exercise clause does not prohibit Congress and local governments from validly regulating religious conduct." *Grace United Methodist Church v. City Cheyenne*, 451 F.3d 643, 649 (10th Cir. 2006) citing *Reynolds v. United States*, 98 U.S. 145, 164 (1878). Therefore, a regulation that is both neutral and generally applicable need only be rationally related to a legitimate governmental interest to survive a free exercise challenge. *San Jose Christian College*, 360 F.3d at 1030 (stating the government can enforce neutral, generally applicable statutes that incidentally burden religious practice if there is a rational basis for the law). Thus, "'a free exercise violation hinges on showing that the challenged law is either not neutral or not generally applicable.'" *Id*. quoting *American Family Ass'n, Inc. v. City and County of San Francisco*, 277 F.3d 1114, 1123 (9th Cir.), *cert. denied*, 537 U.S. 886 (2002).

Here, the Church the does not dispute that Burien's temporary use permitting requirement under BMC 19.75.010 is neutral or that the City has a rational basis for the requirement. Instead, the Church argues that the permitting requirement is not "generally applicable" and therefore must be supported by a compelling governmental reason. The City counters that the permitting requirement is generally applicable because it applies to all landowners who wish to conduct non-designated land use in a multi-family zone. In reply, the Church argues that this is not true and points to the fact that BMC 19.75.020.1

provides some exemptions to the permitting requirement for certain activities, thereby defeating the requirement's general applicability. The Church is correct that BMC 19.75.020.1 does allow for some exemptions (*e.g.*, Christmas tree lots, parking lot sales, and produce stands), but those exemptions only apply to land use within commercially zoned property. They do not apply to land use within multi-family zoned property. Thus, the permitting requirement under BMC 19.75.010 is generally applicable to all landowners within multi-family zoning.

The Church also points out that BMC 19.75.020.2 and .3 provide for exemptions to the temporary use permit requirement for "[a]ny use not exceeding a cumulative of two days each calendar year" or "[a]ny community event held in a public park" that does not exceed "seven days". While the Church is correct that these exemptions do apply to multi-family zoning, the exemptions are available for *any* use or *any* community event by *any* landowner within multi-family zoning so long as the use or event does not exceed two or seven days respectively. Thus, the permitting scheme remains generally applicable because the exemptions are available to all landowners. *Grace United*, 451 F.3d at 651 (noting that a zoning ordinance that permits some exemptions remains generally applicable if it is motivated by secular purposes and impacts equally all landowners seeking the exemptions).

Lastly, the Church points out that BMC 19.75.060 also exempts from the temporary use permit requirement mobile homes at construction sites that are used as temporary dwellings by landowners during construction. According to the Church, this means that the permitting requirement is not generally applicable to all landowners in multi-family zones because it requires the Church to obtain a permit to allow unhoused individuals to

temporary dwell on its property but does not require the same of a landowner if

construction is being done on their property. Once again, the Church aims at a false target.

The Supreme Court has clarified that all "laws are selective to some extent" but it is the

"categories of selection" that are of "paramount concern". *Church of Lukumi Babalu Aye,*

508 U.S. at 542. "The Free Exercise Clause 'protect[s] religious observers against unequal

treatment and inequality results when a legislature decides that the governmental interests

it seeks to advance are worthy of being pursued only against conduct with a religious

motivation.'" *Id*. at 543-543 quoting *Hobbie v. Unemployment Appeals Comm'n of Fla*.,

480 U.S. 136, 148 (1987) (internal quotation marks and citation omitted). Thus, zoning

laws that permit some individualized assessment for variances remain "generally

applicable" so long as the laws are motivated by secular purposes and impact equally all

landowners seeking the variances. That, of course, is the case here. No landowner—secular

or religious—is permitted to host a homeless encampment within a multi-family zone

without a permit. And any landowner—secular or religious—is allowed to use a mobile

home as a temporary dwelling on its land during construction within a multi-family zone.

Nor has the Church alleged that Burien's regulatory scheme is religiously motivated.

Indeed, it does not dispute the City's claim that the reason it required the permit for the

homeless encampment was to ensure the health and safety of the occupants of the

encampment as well as the surrounding neighborhood. Therefore, because the Church has

failed to plausibly allege that the challenged regulatory scheme was not neutral and not

generally applicable, it has failed to state a free exercise claim under the First Amendment.

*See First Assembly of God of Naples v. Collier County*, 20 F.3d 419, 423 (11th Cir. 1994)

(city's ordinance prohibiting homeless shelters in certain areas held neutral and of general

applicability because it was motivated by health and safety concerns, applied to both church and secular group homes, and did not completely prohibit operation of homeless shelters).

## V.    CONCLUSION

For the foregoing reasons, the Court HEREBY GRANTS Defendants' motion to dismiss for failure to state a claim on which relief can be granted. This matter is HEREBY DISMISSED.

Dated this 3rd day of February 2025.


Barbara Jacobs Rothstein
U.S. District Court Judge